OPINION OF THE COURT
Ralph A. Beisner, J.
This action was tried before the court over four days, from May 13, 1996 to May 16, 1996. The plaintiff is seeking a declaratory judgment rescinding a lease with the defendant and attendant damages. The plaintiff alleges that the defendant failed to reveal the nature of the business that it intended to operate from the plaintiff’s rental property. The defendant *144 counterclaims for damages as a result of the plaintiffs breach of the lease.
The plaintiff called Colleen Quinn and David Sorbaro as witnesses and read portions of the examination before trial of Dennis Lesieur. The defendant called Dennis Lesieur, Anthony Nota and Daniel Geribo. Plaintiff recalled Mr. Sorbaro and Charles Murdock in rebuttal and the defendant read portions of the deposition of Mr. Lesieur in surrebuttal.
Both parties have submitted memoranda of law and proposed findings of fact and conclusions of law for the court’s consideration. The following constitutes the decision of the court.
FINDINGS OF FACT
Plaintiff is a New York general partnership with an office at 186 North Bedford Road, Mount Kisco, New York.
Defendant is a Rhode Island corporation with an office at 1800 Mineral Springs Road, Providence, Rhode Island.
Plaintiff is the owner of the Westside Plaza, a commercial building located at South Road, Poughkeepsie, New York. In September 1992 plaintiff was offering a vacant store in that property for rent.
On September 1, 1992, the defendant’s general manager, Dennis Lesieur, telephoned Colleen Quinn who was a licensed real estate salesperson working with CB Commercial Real Estate, a real estate broker who had been retained by the plaintiff to offer the vacant store for rent. Mr. Lesieur indicated that the defendant was interested in renting the vacant store. In response to a request from Ms. Quinn for information, about the defendant’s business enterprises, Mr. Lesieur advised Ms. Quinn that the defendant was a Rhode Island corporation that operated video stores in Rhode Island, Maine, Massachusetts and Connecticut. He stated to Ms. Quinn that the defendant did not have any stores in New York and was interested in entering the New York market. At the time that these representations were made by Mr. Lesieur, the defendant operated two stores in New York, one on River Street in Troy and the other on Hamilton Street in Poughkeepsie. Mr. Lesieur knew that such stores were being operated by the defendant at that time.
On September 17, 1992, Mr. Lesieur met Ms. Quinn at the plaintiffs store on South Road. During that meeting, Ms. Quinn made reference to the competition that the defendant would experience from a nearby Blockbuster Video store and a nearby *145 Video Treats store. In response to that reference, Mr. Lesieur stated that the defendant did not compete with Blockbuster Video or Video Treats because the defendant sold videos and did not rent them as did Blockbuster Video and Video Treats. Ms. Quinn then asked Mr. Lesieur if his company was like Sun Coast Video, a video store chain which sold videos and which catered to the children’s market, and Mr. Lesieur said yes. Mr. Lesieur’s acknowledgment that there was a similarity between defendant’s stores and Sun Coast Video was false because there was no similarity in the products sold by defendant and the products sold by Sun Coast and Mr. Lesieur knew that any such comparison was inaccurate.
On September 22, 1992, Mr. Lesieur sent a written proposal to Ms. Quinn in which defendant offered to rent the vacant store from the plaintiff. The written proposal stated that the defendant operated 22 video stores but did not specify the States in which it operated or further identify the nature of the videos marketed by the defendant or indicate that defendant marketed any other merchandise. On that same date defendant sent Ms. Quinn its financial statement. In a note in the financial statement the defendant’s business was described as "the retail sale of videos and magazines to the general public”.
Prior to and during the time that Mr. Lesieur was negotiating with Ms. Quinn for rental of the store, only a small part of defendant’s business consisted of sales of periodicals and videos intended for the general public. The bulk of defendant’s business consisted of the sale of videos that could be described variously as x-rated, adult, or pornographic; the sale of sexual aids and paraphernalia; the sale of x-rated, adult, or pornographic magazines; and the operation of video booths showing x-rated, adult, or pornographic videos. Minors were not permitted to enter any of defendant’s stores at that time. Thus, during the course of the negotiations between Mr. Lesieur and Ms. Quinn, when Mr. Lesieur described the defendant’s business as the operation of video stores, that characterization was false and Mr. Lesieur knew it to be false.
At no time prior to the execution of the lease between the defendant and the plaintiff did Ms. Quinn or David Sorbaro or anyone else on behalf of the plaintiff conduct any investigation of the defendant other than the review of the defendant’s financial statement. They relied solely upon the oral statements made by Mr. Lesieur and the defendant’s financial statement that was presented to them by Mr. Lesieur in determin *146 ing the nature of defendant’s business and executing the lease with the defendant.
In the course of numerous other lease negotiations prior to the negotiation with the defendant, neither Ms. Quinn nor Mr. Sorbaro had ever conducted any investigations to confirm the nature of the business being done by any other prospective tenants, other than the review of financial statements presented to them by such other prospective tenants.
Dennis Lesieur had limited experience in negotiating leases for the defendant between 1989 and 1992. He had negotiated approximately four leases in that time. On several occasions he had specified the products that defendant sold and the leases were never signed. Thereafter it was Mr. Lesieur’s policy not to disclose the specific nature of the defendant’s business. This was his policy in the negotiations with the plaintiff.
At the time that the defendant was negotiating with the plaintiff to lease plaintiff’s store and continuously thereafter, defendant intended to operate video booths in the plaintiff’s store but intentionally failed to disclose this fact to the plaintiff.
During mid-October 1992, a written lease prepared by the plaintiff’s attorney pertaining to the vacant store was executed by the defendant and the plaintiff. The lease permitted the defendant to use the plaintiff’s premises for retail purposes. The lease required the defendant to comply with all local ordinances and laws. The lease also required the defendant to perform interior construction to make the store ready for its occupancy. The defendant gave the plaintiff two months’ rent of $7,975 as a security deposit and the first month’s rent of $3,987.50.
Defendant’s employees commenced construction of lighting soffits for the interior of the store and retained a contractor to install an interior partition wall in the store. In early December 1992, the defendant’s construction employees and its independent contractor worked at the store. During this time period the defendant’s independent contractor erected the interior partition wall and the defendant’s employees began installing the soffits that had been constructed at the defendant’s workshop and installed some lighting fixtures.
During the same period of time, December 1, 1992, through December 7, 1992, a separate contractor, Charles Murdock, was working for the plaintiff and remodeling the bathroom in the premises to make it handicapped equipped. While Mr. Mur *147 dock was working in the premises, he had discussions with one or more of the defendant’s employees. One of them advised him that after the premises were opened for business the defendant intended to install video viewing booths which customers would use to view erotic or x-rated videos and that this was a major portion of the defendant’s business. The same employee of the defendant also advised Mr. Murdock that the defendant already operated a store in Poughkeepsie, called the Hamilton Book and Video Store, which sold x-rated videos and magazines and also had x-rated video booths.
When Mr. Murdock received the foregoing information he relayed it to David Sorbaro, the plaintiffs managing partner. Mr. Sorbaro then called his attorney, George Barnett, and Mr. Barnett telephoned Mr. Lesieur. During the course of the telephone conversation between Mr. Barnett and Mr. Lesieur, Mr. Barnett asked Mr. Lesieur if the defendant intended to install x-rated video booths in the plaintiffs store and Mr. Lesieur stated that it did not so intend. Mr. Barnett also asked ■ Mr. Lesieur whether the defendant owned the Hamilton Book and Video Store in Poughkeepsie and Mr. Lesieur declined to answer.
At the end of business on December 7, 1992, pursuant to the instructions of David Sorbaro, Mr. Murdock changed the locks on plaintiffs store and wired the front door of the store shut.
At the time that the defendant’s construction employees left the plaintiffs store at the end of business on December 7, 1992, they removed all of their tools from the premises, but left the partially installed soffits in place and also left some sheets of wall board, some ceiling tiles and some electric lights.
Defendant was permitted to reenter the plaintiffs store on March 15, 1994, after plaintiff rented one half of the store to another tenant. On that date, the defendant was permitted to remove the soffits and the materials that had been left behind by the defendant and all of such materials were removed by the defendant.
In 1992 the defendant operated 22 stores, two of which were in New York State. Each store derived at least two thirds of its income from the sale of pornographic products. At least 10% of sales were in pornographic paraphernalia. Many of the stores contained viewing booths which allowed customers to enter a private booth for the purpose of viewing pornographic, erotic and sexually explicit videos.
It is agreed that the premises are no longer suitable for the defendant’s business purposes.
*148 CONCLUSIONS OF LAW
The initial issue for resolution by this court is whether on the facts of this case the defendant tenant fraudulently misrepresented by affirmative statement and silence the nature of the business it intended to conduct on the plaintiff landlord’s premises.
To sustain a cause of action for fraud, there must be a representation of fact which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury (Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112, 119; Brown v Lockwood, 76 AD2d 721, 730-731).
The defendant’s agent, Dennis Lesieur, had a policy of not telling prospective landlords the specific nature of the defendant’s business since on previous occasions the prospective landlords had refused to consummate leaseholds. This state of mind, coupled with the facts that Lesieur had disclosed, such as the comparison to Sun Coast Video and the description of its business as the retail sale of videos and magazines to the general public, and the facts that Lesieur had not disclosed, such as the sale of sexually explicit paraphernalia, require the court to conclude that the defendant did intentionally misrepresent material facts which induced the plaintiff to enter into this lease. The law is clear that fraud in the inducement is grounds for rescission of the agreement (e.g., Taylor & Jennings v Bellino Bros. Constr. Co., 106 AD2d 779, 780).
Fraud in the inducement must be proven by a standard of clear and convincing evidence rather than only a fair preponderance of the credible evidence (see, Mix v Neff, 99 AD2d 180, 183). The court finds that the plaintiff has sustained its burden of proof and is entitled to rescission of this lease.
While it is not necessary to the determination herein, this court further finds that the sexually explicit nature of a pornographic video and paraphernalia retail store creates an affirmative duty on the part of the tenant to disclose the specific nature of the proposed use to the prospective landlord. It is recognized that sexually explicit material enjoys the protection of constitutional free speech (US Const 1st, 14th Amends; NY Const, art I, § 8; see, People ex rel. Arcara v Cloud Books, 68 NY2d 553). It must also be recognized that many individuals consider pornography and sexually explicit material to be personally abhorrent, offensive, demeaning, and violative of their personal, social or religious values. It should also *149 be recognized that a store such as that operated by this defendant may have an adverse economic impact on adjacent properties to that owned by the landlord (see generally, Matter of Town of lslip v Caviglia, 73 NY2d 544, 551).
It is established law that a municipality may not legislate a blanket prohibition based on content of the material to be sold (Matter of Town of Islip v Caviglia, supra, at 554), but the issues in this litigation deal with the respective rights of private citizens. This is the distinction which makes this a ruling of first impression.
There is no discernable public interest which would require the courts to foist on a landlord a pornographic use of his or her private property by virtue of the silence of the prospective tenant. Prospective landlords, therefore, should have the right to make an informed decision regarding such a use of his or her property, whether that decision is motivated by personal values, societal values or economics. Clearly this requirement of disclosure may have application to other objectionable, albeit legal, uses between a landlord and tenant. The sale of Nazi memorabilia, gun stores and unorthodox houses of worship are some examples of uses which could reasonably be expected to violate the personal or societal values of a property owner and impose an equitable duty on a prospective tenant of complete and forthright disclosure.
For the reasons stated this court finds that a tenant who intends to use a rental space for the sale of sexually explicit material has an affirmative duty to disclose such a use to the landlord. Failure to do so entitles the landlord to rescission of the lease.
DAMAGES
The plaintiff’s claims for punitive or compensable damages are denied. There has been an insufficient showing that the plaintiff has suffered any compensatory damages as a result of the defendant’s fraud. Punitive damages are not warranted because it does not appear that the fraud was upon the general public (Diker v Cathray Constr. Corp., 158 AD2d 657, 658).
The proof has shown that defendant paid to the plaintiff two months’ rent as security and one month’s rent totaling $11,962.50. The defendant is awarded this amount as actual damages.
*150 The defendant’s claim for conversion of tools and building materials after it was denied access to the premises is denied. The proof adduced at the trial is insufficient to support an award of damages for conversion.