[747 NYS2d 441]

SOKOLOW, DUNAUD, MERCADIER & CARRERAS LLP, Respondent-Appellant, v MICHAEL A. LACHER et al., Appellants-Respondents.

First Department, September 17, 2002

## APPEARANCES OF COUNSEL

*Michael J. Calvey* of counsel, New York City (*Sokolow, Dunaud, Mercadier & Carreras LLP,* attorneys), for respondent-appellant.

*Paul J. Curran* of counsel (*Gregory J. Wallance, Edward C. Crouter* and *Guy R. Fairstein* on the brief; *Kaye Scholer LLP,* New York City, and *Kurzman Eisenberg Corbin Lever & Goodman, LLP,* White Plains, attorneys), for appellants-respondents.

**OPINION OF THE COURT**

GONZALEZ, J.

This action arose out of a failed merger between two law firms. The primary dispute on appeal is whether the IAS court properly declared plaintiff law firm the sole tenant of a valuable leasehold that was originally owned by defendant law firm and was intended to be the offices of the newly merged firm. Plaintiff Sokolow, Dunaud, Mercadier & Carreras LLP (SDMC) is a New York limited liability partnership operating as a law firm in New York City. SDMC is affiliated with a French law firm bearing the same name. Defendant Michael A. Lacher is a New York attorney doing business under the firm name Lacher & Lovell-Taylor, P.C. (collectively Lacher). Since March 1, 1994, Lacher operated its practice out of leased premises located on the 6th floor at 770 Lexington Avenue (leased premises).

In 1999, Lacher entered into discussions with Mark Lebow, a partner at SDMC, over the possibility of merging or integrating the two firms. According to Lacher, SDMC was an attractive merger candidate because of its substantial French-based clients. Lacher alleges that during these merger discussions, Lebow and other SDMC attorneys misrepresented that SDMC had 15 partners with large-firm credentials in the areas of mergers and acquisitions, corporate finance, banking, intellectual property, securities law and other complex litigation. Lacher was introduced to these "partners" and was told that they would continue with the new firm after the merger. In fact, according to Lacher, SDMC had only three partners and the other attorneys had only "of counsel" or "overhead" relationships with SDMC. Additional misrepresentations alleged by Lacher include that the Paris office of SDMC was a spin-off of the Coudert Brothers law firm, that Lebow was once the managing partner at Coudert Brothers, and that all partners of SDMC had continued access to the firm's books, records and financial statements.

In anticipation of the merger and SDMC's proposed move into Lacher's offices at 770 Lexington Avenue, SDMC, Lacher and the building's landlord negotiated an amendment to the lease (lease amendment), effective as of May 1, 2000, in which Lacher and SDMC became jointly and severally liable as tenant. The amendment also extended the lease term to June 30, 2010.

On June 15, 2000, the parties executed a merger agreement (Agreement) whereby "SDMC and Lacher w[ould] to the fullest

extent possible function as a single firm practicing under the [SDMC] name," and that all revenue received by attorneys of the new SDMC firm from the practice of law would be deposited in SDMC accounts. The Agreement, which was to take effect June 15, 2000, further required Lacher to "cease active business, collect its assets, pay its liabilities and liquidate as soon as is practicable."

Paragraph 1 (C) of the Agreement provided that Lacher would be admitted as "general equity partner" subject to the terms of the original SDMC partnership agreement, "except that Lacher shall not be liable for any of the debts and losses of the Firm until such time as he is accorded a share of the Firm's profits." Paragraph 3 (D) of the Agreement stated that Lacher would receive a percentage of firm profits as a general equity partner beginning in calendar year 2002. Prior to 2002, Lacher was to receive the same monthly draw of $20,000 as the other partners as well as certain contingency fees and receivables. SDMC further agreed to pay off a loan owed by Lacher with a balance of $200,000.

Most significantly, under paragraph 2 (E) of the Agreement (lease assignment), Lacher assigned "all of [its] right, title and interest" in the lease of the Lexington Avenue premises to SDMC, which thereby "assume[d] full responsibility for the Lease as if [SDMC] were the sole signatory as tenant to the Lease."

The merger of Lacher and SDMC did not last long, with both parties asserting various breaches and violations by the other party. SDMC alleges that in June 2000, it began paying rent on the lease, paid the salaries and operating expenses relating to former Lacher employees, and commenced renovations of the leased premises ultimately costing $600,000. Despite this, SDMC alleges that Lacher refused to bill clients in the SDMC firm name and instead was billing them under the Lacher firm name.

Lacher, on the other hand, claims that SDMC withheld his monthly draw, refused to credit his firm's receivables, never announced the merger or held. him out as partner, and sought to terminate Lacher attorneys and personnel. Lacher also states that in September 2000 he discovered that, contrary to SDMC's premerger representations, the original SDMC consisted of only three partners and the other attorneys to whom he had been introduced had only of counsel or overhead relationships with SDMC.

In late September or early October, Lacher sent a series of memoranda to SDMC partners complaining about SDMC's

failure to implement the Agreement. The situation continued to deteriorate and by memorandum dated January 8, 2001, Lacher notified Lebow and Nicholas Sokolow, another SDMC partner, that because the Agreement had never been implemented and had been induced by SDMC's misrepresentations, it was declaring the Agreement canceled and "rescinded *ab initio.*"

On January 16, 2001, SDMC commenced the instant action against Lacher alleging in its complaint causes of action for fraud, breach of contract, tortious interference with contract, interference with business relationships, breach of fiduciary duty and trespass. SDMC also moved by order to show cause for immediate injunctive relief. Lacher answered and counterclaimed, alleging, inter alia, that the Agreement was executory and never implemented by SDMC and, further, that it should be rescinded because it was induced by SDMC's fraudulent misrepresentations. On January 19, 2001, the IAS court issued a "status quo order," directing that both parties share the rent equally and enjoining them from interfering with the other's practice.

The status quo order proved ineffective. SDMC commenced eight lawsuits against separate Lacher clients seeking to collect fees it claimed were owed to it (client cases). Additionally, Lacher initially failed to pay its share of the rent, requiring judicial intervention. In April 2001, SDMC moved by order to show cause to hold attorney Lacher in contempt for violating the status quo order, to evict him from the premises and to direct him to undergo psychiatric evaluation. SDMC alleged that Lacher engaged in bizarre behavior which included vandalism and harassment of SDMC office personnel. The IAS court referred the matter to a Referee to report on the conditions at the premises. After a five-day hearing, the Referee issued a report finding fault with both sides and concluding that given the high tensions surrounding the dispute, one side or the other should be directed to vacate the premises during the pendency of the action.

On July 24, 2001, SDMC moved, inter alia, to confirm the favorable portions of the Referee's report and reject the unfavorable portions; consolidate the client cases with the instant action; direct that all parties pay into court any fees received from the client cases; disqualify Lacher from representing any of the parties in the client cases and grant partial summary judgment declaring that SDMC is the sole tenant of record for the leased premises. Lacher cross-moved to confirm

and reject portions of the Referee's report; for a direction that SDMC discontinue one of the client cases; and for a stay of prosecution of the remaining client cases.

In its oral decision dictated into the record, the IAS court granted SDMC's motion for partial summary judgment declaring it the sole tenant under the lease, relying on the lease amendment and lease assignment provision of the Agreement. It rejected Lacher's assertion that these agreements should be rescinded because they were merely unfulfilled executory letters of intent. The court held that even if Lacher "didn't get precisely what he felt he had bargained for," that did not entitle him to rescind the agreements given the fact that SDMC had "certainly changed their position in a very material way."

The court granted plaintiff's motion to consolidate the client cases with the instant action. It found common issues of law and fact since the instant action "contains allegations that monies received by Mr. Lacher and his law firm belong to the plaintiff law firm based on this partnership agreement," and the client cases sought recovery of the same monies. The court also ordered Lacher disqualified from representing the clients in the client cases, finding "an obvious conflict of interest between his position as a clear witness in the case and his role as an attorney."

On appeal, Lacher argues that in granting SDMC partial summary judgment declaring it the sole tenant under the lease, the IAS court ignored its argument that the lease assignment and other agreements should be rescinded because they were induced by SDMC's fraudulent misrepresentations as to the composition of the firm. Lacher contends that issues of fact exist as to whether it is entitled to rescind the agreements. According to Lacher, the IAS court further erred in holding that rescission was unavailable due to SDMC's change of position in reliance upon the Agreement.

■ The grant of partial summary judgment to SDMC should be reversed as SDMC has failed to meet its burden of demonstrating the absence of material issues of fact on Lacher's fraud-based rescission claim. We further conclude that the remedy of rescission is not necessarily precluded in this case.

Initially, SDMC argues that the award of partial summary judgment should not be disturbed because Lacher failed to raise the fraud-based rescission argument in opposition to SDMC's motion below. This contention finds limited support in view of the fact that the IAS court did not even address Lacher's fraud argument. Nevertheless, we find the argument

was adequately preserved. Although Lacher's opposition papers focused primarily on its alternative claim that the agreements were merely executory and unfulfilled, its affidavit in opposition included the statement: "The forfeiture that SDMC is attempting to work against me, against the backdrop of SDMC's deceptions and defaults, is fraud, entitling [Lacher] to rescission." This assertion was repeated in near identical terms in Lacher's accompanying memorandum of law in opposition. Moreover, it is clear that the "deceptions" and "fraud" refer to the detailed allegations in Lacher's pleadings, specifically its eighth affirmative defense and second counterclaim, which clearly state a claim for rescission based on fraud in the inducement. Accordingly, Lacher's claim for rescission based on fraud was raised in the court below and is properly before us.

Turning to the merits, we conclude that the propriety of the IAS court's grant of partial summary judgment turns on the viability of Lacher's fraud-based rescission claim. As the party seeking summary judgment, SDMC bore the burden of demonstrating that Lacher's fraudulent inducement counterclaim was deficient as a matter of law (*see generally Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853; *see also Aimatop Rest. v Liberty Mut. Fire Ins. Co.*, 74 AD2d 516, 517 [summary judgment movant must demonstrate the absence of genuine issues of material fact on every relevant issue raised by the pleadings, including any affirmative defense]). SDMC failed to meet this burden.

To sustain a claim for fraudulent inducement, there must be a knowing misrepresentation of material fact, which is intended to deceive another party and to induce them to act upon it, causing injury (*see Jo Ann Homes at Bellmore v Dworetz*, 25 NY2d 112, 119; *Sorbaro Co. v Capital Video Corp.*, 168 Misc 2d 143, 148, *affd* 245 AD2d 364). Lacher's eighth affirmative defense and second counterclaim allege that Lebow and other SDMC partners made representations concerning the composition of SDMC and the experience of its partners; that such representations were false when made and were known to be false; that they were made for the purpose of inducing Lacher to execute the Agreement, including the lease assignment; that Lacher relied upon the truth of those representations; and that had Lacher known these representations were false he would not have executed the Agreement and pursued the merger.

These allegations state a viable claim for rescinding the Agreement based on fraudulent inducement (*see Reiser, Inc. v*

*Roberts Real Estate*, 292 AD2d 726 [issues of fact exist as to whether subdivision listing agreement should be rescinded due to defendant's fraudulent misrepresentation as to defendant's agent's prior experience in marketing subdivisions]; *Sorbaro Co. v Capital Video Corp.*, 168 Misc 2d at 148 [landlord entitled to rescind lease where tenant misrepresented intended use of premises in order to induce landlord into signing lease]).

SDMC does not directly challenge the viability of Lacher's fraudulent inducement claim. In its brief, it does not explicitly deny making the representations; nor does it contest the materiality of the statements or Lacher's purported reliance thereon. Instead, it limits its challenge to opposing Lacher's right to rescission, arguing that even if the fraudulent inducement claim were viable, Lacher would only be entitled to money damages.

The equitable remedy of rescission "is to be invoked only when there is lacking complete and adequate remedy at law and where the *status quo* may be substantially restored" (*Rudman v Cowles Communications*, 30 NY2d 1, 13 [citation omitted]). Generally, a party cannot rescind a contract if that would injure the party against whom rescission is sought because, under the contract, that party has changed his position and cannot be returned to the status quo ante (*see Gravenhorst v Zimmerman*, 236 NY 22, 34-35; *Kamerman v Curtis*, 285 NY 221, 226). For instance, where restoration of the status quo ante is made impractical by a substantial change of position (*see Rudman v Cowles Communications*, 30 NY2d at 13-14 [plaintiff not entitled to rescission where damages appear adequate and it is "impracticable to restore the *status quo*, the assimilation of plaintiff's company being complete"]), or by the nature of the transaction at issue (*Tarleton Bldg. Corp. v Spider Staging Sales Co.*, 26 AD2d 809 [rescission unavailable where transaction involving installation of facilities designed for particular building did not lend itself to restoration of status quo]), the remedy of rescission will not be available.

SDMC argues that the IAS court properly ruled that rescission was precluded in this case because it made certain irreversible changes of position based on the Agreement, including executing an amendment to the lease which extended the lease term and made it liable as tenant, moving its law offices to the leased premises and undertaking $600,000 of renovations of the leased premises to accommodate the merged firm. SDMC has made an adequate showing of a material change in position which, in the absence of Lacher's fraud in the inducement

claim, would require us to uphold the IAS court's grant of partial summary judgment. However, because SDMC's argument that it materially changed its position in reliance on the Agreement could be undermined by Lacher's claim that the Agreement was fraudulently induced in the first place, partial summary judgment should have been denied.

The rule that rescission is unavailable where a party cannot be returned to the status quo ante will not be strictly enforced where the party against whom rescission is sought is a wrongdoer who is exploiting its change of position to shield its wrongdoing (*Butler v Prentiss*, 158 NY 49; *see also* 22A NY Jur 2d, Contracts § 551). In *Butler*, the Court of Appeals held that an agreement between two partners in a manufacturing business should be rescinded where one partner's misrepresentations induced the other partner to make valuable concessions. In rejecting the argument of the partner guilty of the misrepresentations that rescission should be denied because it could not be restored to its pre-agreement position, the Court stated:

> "When, without fault on the part of the one defrauded * * * it is impossible to restore the one guilty of the fraud to his original condition, the general rule of restoration is not strictly applied, because it would become a loophole for the escape of fraud. Equity makes a reasonable application of the rule by requiring whatever fair dealing requires under all the circumstances * * * but it does not permit the rule to become a shield for wrongdoing" (*id.* at 64; *see also Hammond v Pennock*, 61 NY 145, 153-154).

Accordingly, because Lacher's fraud claim, if proven at trial, might justify rescission of the Agreement notwithstanding SDMC's change of position, we reverse the IAS court's grant of partial summary judgment based on its finding that rescission is precluded under the circumstances of this case.

Additional triable issues of fact exist which further preclude summary judgment. SDMC argues that Lacher's fraud in the inducement counterclaim is deficient because he failed to exercise due diligence in ascertaining the suitability of SDMC as a merger candidate (*see Cantor Fitzgerald v Cantor Fitzgerald Sec.*, 268 AD2d 324, 326, *affd* 95 NY2d 919 [a party will not be relieved of the consequences of its own failure to proceed with caution with respect to a business transaction, even where rescission is sought on the ground of fraudulent inducement]). While SDMC may succeed in this argument at trial, on this

motion for partial summary judgment it was SDMC's burden to establish an absence of due diligence as a matter of law, a burden SDMC has plainly not met at this juncture.

Similarly, in the context of a failed merger between two law firms, where each party claims that the other breached the agreements in issue and little discovery has been had on these issues, a determination as a matter of law that Lacher's acceptance of benefits and delay in seeking rescission of the agreement vitiates his fraud in the inducement claim would clearly be premature.[1]

In sum, the IAS court erred in prematurely granting SDMC partial summary judgment on its lease claim where Lacher's fraud-based rescission claim, if successful, would undermine SDMC's entitlement to its claim on the leasehold (*see Reiser, Inc. v Roberts Real Estate*, 292 AD2d at 729 [inasmuch as plaintiff's cause of action for fraudulent inducement could undermine defendant's entitlement to relief, it would be premature to grant defendant's counterclaim for breach of the agreement]; *Eurotech Dev. v Adirondack Pennysaver*, 224 AD2d 738, 739 [summary judgment on promissory note was premature where purchaser might be entitled to rescission of the purchase agreement if their allegation of fraud in the inducement can be proven]; *see also Pomranz v Tauber*, 279 AD2d 411).

■ Lacher next argues that the IAS court erred in consolidating the client cases with the underlying action between two law firms. Lacher contends that consolidation will harm his relationship with his existing clients by embroiling them in the underlying litigation with SDMC and substantially increasing their litigation costs. Lacher also argues that the interests of judicial economy will not be served by consolidation since a determination in the underlying dispute as to the validity of the Agreement would essentially resolve the issue of which party is entitled to the fees in the client cases. SDMC responds that the common issues of law and fact justify the IAS court's consolidation order and that the allegations of prejudice to Lacher's clients are insubstantial.

CPLR 602 (a) vests a trial court with discretion to order consolidation of "actions involving a common question of law or

---

1. In this regard, we note that Lacher sent a memo to SDMC alerting it to his complaints in October 2001, a mere one month after SDMC moved into the leased premises. Additionally, SDMC has provided little or no documentation to support its claim that Lacher received various benefits under the agreement for six months prior to seeking rescission.

fact." Consolidation of actions is appropriate "where it will avoid unnecessary duplication of trials, save unnecessary costs and expense and prevent the injustice which would result from divergent decisions based on the same facts" (*Chinatown Apts. v New York City Tr. Auth.*, 100 AD2d 824, 825). A party resisting consolidation has the burden of demonstrating prejudice to a substantial right.

The order directing consolidation was an improvident exercise of discretion, notwithstanding the existence of common issues of law and fact. The instant action will require the adjudication of plaintiff's multiple causes of action arising out of Lacher's alleged breaches of the Agreement, as well as Lacher's counterclaim for rescission of the Agreement based on fraud. In addition, given the history of this litigation and the tenor of the proceedings before the Referee, contentious discovery proceedings and a lengthy trial may be anticipated. Significantly, the issues dominating the trial of this action will have little bearing on the defendants in the client cases, who share the misfortune of being caught in the middle of this bitter dispute. The prejudice to the defendants in the client cases in requiring them to become embroiled in a costly trial between two law firms is manifest. Moreover, resolution of the underlying dispute over the validity of the Agreement will promote judicial economy since that determination will most likely be dispositive on the question of who is entitled to the fees in the client cases. For these reasons, we vacate the IAS court's consolidation order and direct a stay of the client cases pending resolution of this action (*see Pomeranz v Blodnick*, 162 AD2d 323, 325 [injunctive relief barring lawsuits against clients was appropriate to prevent clients from becoming embroiled in dissolution dispute and to protect plaintiffs' ongoing relationship with their clients]).

■ On the issue of disqualification, we conclude that the IAS court properly exercised its discretion in disqualifying Lacher from representing the defendants in the client cases. The advocate-witness rule requires an attorney to withdraw from a case "if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client" (Code of Professional Responsibility DR 5-102 [a] [22 NYCRR 1200.21 (a)]). "But such disqualification is required only where the testimony by the attorney is considered *necessary*." (*Broadwhite Assoc. v Truong*, 237 AD2d 162, 162-163; *S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp.*, 69 NY2d 437, 446.) "Testimony may be relevant and even

highly useful but still not strictly necessary. A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence" (*S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp.*, 69 NY2d at 446).

Contrary to attorney Lacher's argument, his testimony will likely be necessary in the client cases (*see Hillcrest Owners v Preferred Mut. Ins. Co.*, 234 AD2d 269, 269-270; *Moses & Singer v S&S Mach. Corp.*, 251 AD2d 271, *lv denied* 92 NY2d 1024; *Kubin v Miller*, 801 F Supp 1101, 1113 [SD NY 1992]). In those cases, SDMC apparently seeks recovery of any fees paid to Lacher by the defendants-clients in accordance with the terms of the Agreement prior to Lacher's repudiation thereof.[2] Moreover, there is evidence in the record that despite claiming he was never a partner at SDMC, Lacher appeared as attorney of record for SDMC on behalf of one or more of said clients during the relevant period, yet collected fees in his own firm's name for such services. It is obvious, therefore, that Lacher's testimony will be necessary in the client cases to explain why the clients' fees were properly paid directly to him rather than SDMC.

Lacher's argument that his testimony is not necessary because other evidence is available to support the clients' defense in these cases is not persuasive. Lacher facilely asserts that the Agreement itself and the clients' testimony will be sufficient to defeat SDMC's claims. We disagree. Although the clients will be able to offer competent evidence as to the nature, scope and timing of their retention of Lacher and their payment of fees to him, and the Agreement will provide an outline of the proposed integration of the firm's accounts and receivables, there is no witness other than Lacher who can provide the crucial explanation as to why certain fees received are not payable to SDMC under the Agreement (*Kubin v Miller*, 801 F Supp at 1112-1113 [in action for breach of merger agreements, defendant's attorney disqualified due to his unique knowledge about parties' decision to create shareholders' agreement and defendant's alleged repudiation thereof; attorney also drafted written merger agreements]). Additionally, it is apparent that Lacher will likely have to show that the Agreement is void in order to prove entitlement to the fees—and we perceive no witness other than Lacher who will be able to provide the necessary evidence to void the agreement as executory or based on

---

2. SDMC's complaints in the client cases were not included in the record on appeal.

fraud. Accordingly, because it is necessary that Lacher give testimony on his clients' behalf, he was properly disqualified under DR 5-102 (a).

The cases cited by Lacher are distinguishable because the testimony of the attorneys-witnesses in those cases would be cumulative to other available evidence (*see Matter of Cowen & Co. v Tecnoconsult Holdings*, 234 AD2d 86, 87 [attorney's testimony not necessary as four other witnesses available to testify on same issue]; *Kirshon, Shron, Cornell & Teitelbaum v Savarese*, 182 AD2d 911, 912 [no showing that attorney's testimony would be noncumulative of records and testimony of plaintiff's representatives]). Nor was SDMC required to show that Lacher's continued representation would prejudice his clients; such a showing is required only when the attorney is called as a witness for the adverse party (*see Martinez v Suozzi*, 186 AD2d 378, 379; DR 5-102 [b]), a situation we need not address because we have already found that Lacher's testimony is necessary on behalf of his own clients.

Nor should disqualification have been denied on the ground that it was premature (*cf. Phoenix Assur. Co. v C.A. Shea & Co.*, 237 AD2d 157; *Kirshon, Shron, Cornell & Teitelbaum v Savarese*, 182 AD2d at 912). In contrast to those cases, the arguments raised in the underlying litigation between SDMC and Lacher provide a sufficient basis to conclude, even in the absence of discovery in the client cases, that Lacher's testimony will be necessary to his clients' cases.

However, to the extent that the IAS court's disqualification order extended to the entire Lacher firm, we modify to limit said disqualification to attorney Lacher alone. DR 5-102 (a) permits a law firm to continue representing a client even if one of its attorneys is disqualified as a necessary witness (*see Hillcrest Owners v Preferred Mut. Ins. Co.*, 234 AD2d at 270; *Talvy v American Red Cross*, 205 AD2d 143, 152, *affd* 87 NY2d 826). At this juncture, there is no basis to conclude that any other attorney affiliated with the Lacher firm ought to be called as a witness in the client cases.

Nor does DR 5-103 (a) (22 NYCRR 1200.22 [a]), which prohibits a lawyer from acquiring a proprietary interest in the cause of action or subject matter of litigation he or she is conducting for a client, provide any basis to disqualify the Lacher firm. Even assuming the legal fees already collected from the clients constitute a "proprietary interest," this interest was acquired prior to the commencement of the client cases and has not been shown to conflict with the interests of the clients (*see Biscone v Carnevale*, 186 AD2d 942, 943-944).

With respect to SDMC's cross appeal, we affirm the IAS court's determination in refusing to direct Lacher to vacate the leased premises. The rightful owner of the lease must be determined at trial; there is no basis to lift the IAS court's stay of eviction at this time. Nor, at this juncture, do the Referee's findings merit such relief.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered November 15, 2001, which, inter alia, granted plaintiff's motion for partial summary judgment declaring plaintiff the sole tenant under the leased premises at 770 Lexington Avenue, consolidated separate actions commenced by plaintiff against clients represented by defendant with the instant action and disqualified defendant law firm from representing said clients in those actions, should be modified, on the law, plaintiff's motion for partial summary judgment denied, all discovery is to be completed within 90 days from the date of this order, the consolidation vacated and the client cases stayed pending resolution of the instant action, the disqualification order limited to attorney Lacher alone, and otherwise affirmed, without costs.

WILLIAMS, P.J., NARDELLI, ROSENBERGER and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered November 15, 2001, modified, on the law, plaintiff's motion for partial summary judgment denied, all discovery completed within 90 days from the date of this order, the consolidation of separate actions commenced by plaintiff against clients represented by defendant with the instant action vacated, and the client cases from which defendant law firm was disqualified stayed pending resolution of the instant action, the disqualification order limited to attorney Lacher alone, and otherwise affirmed, without costs.