Treeline Garden City Plaza v UBS Warburg Real Estate Invs. (2004 NY Slip Op 50519(U))

[*1]

Treeline Garden City Plaza v UBS Warburg Real Estate Invs.

2004 NY Slip Op 50519(U)

Decided on May 24, 2004

Supreme Court, Nassau County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 24, 2004

Supreme Court, Nassau County
TREELINE GARDEN CITY PLAZA LLC and TREELINE WHITMAN ASSOCIATES, Plaintiffs,
against
UBS WARBURG REAL ESTATE INVESTMENTS INC. and LASALLE BANK, NATIONAL ASSOCIATION, as trustee for LB-UBS COMMERCIAL MORTGAGE TRUST 2001-C2, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2001-C2, Defendants.
16757-03

FOR Plaintiff
Lowenstein Sandler, P.C.
1330 Avenue of the Americas - 21st Floor
New York, New York 10019
FOR Defendant
(for UBS)
Cole, Schotz, Meisel, Forman & Leonard, P.A.
767 Third Avenue
New York, New York 10019
(for LaSalle)
Zeichner, Ellman & Krause, LLP
575 Lexington Avenue
New York, New York 10022

Leonard B. Austin, J.
Defendant LaSalle Bank, National Association, as Trustee for LB-UBS Commercial Mortgage Trust 2001-C2, Commercial Mortgage Pass-Through Certificates Series 2001-02 ("the Trust") moves for an order, pursuant to CPLR 3211(a)(1), (7) and 3016(b) dismissing the complaint against it.
Plaintiffs Treeline Garden City Plaza, LLC ("Treeline GCP") and Treeline Whitman Associates cross-move for an order pursuant to 3211(c) and 3212(e), granting partial summary judgment on their first cause of action in the form of declaratory relief. Notice to treat Plaintiffs' cross-motion as one for summary judgment was made on notice and granted by this Court.
Defendant UBS Warburg Real Estate Investments Inc. ("UBS") also moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the complaint as against it.
BACKGROUND
Plaintiff Treeline Garden City Plaza LLC is a limited liability company. Its sole member is Plaintiff Treeline Whitman Associates, a general partnership. Treeline Whitman Associates has 14 general partners, one of which, PI Garden, LLC, holds only a 0.0001% interest. The other 13 Treeline Whitman Associates general partners are all members of PI Garden, LLC. Treeline GCP and Treeline Whitman Associates are in the business of owning, managing and investing in commercial property.
Treeline GCP procured a $40 million loan to fund its purchase of an office complex [*2]located at 100, 200 and 300 Garden City Plaza in Garden City, New York. The loan was secured by a mortgage on that property given by UBS. Treeline Whitman Associates is the guarantor of that loan. UBS funded this loan intending to sell it. The loan closed on January 19, 2001. Thereafter, UBS sold it to a securitized mortgage pool known as the Trust, for which Defendant LaSalle Bank is the Trustee.
In this action, the mortgagor, Treeline GCP, and guarantor, Treeline Whitman Associates, seek a declaration that they may proceed with a proposed financial transaction whereby the general partnership, Treeline Whitman Associates, will sell PI Garden, LLC (which holds only a .0001% interest in Treeline Whitmans Associates) to a third-party, Principal Commercial Acceptance, LLC ("PCA"). PCA will, in turn, provide Treeline Whitman Associates with a $10.5 million capital infusion in exchange for a preferred return on its investment. PCA's investment is to be secured by a pledge of the Treeline Whitman Associates' partners' interest in that partnership to PI Garden, LLC.
The mortgagor and guarantor sought permission from the mortgagee's servicer, Wachovia, for this proposed transaction. Permission was ultimately denied pursuant to Section 13(b)(v) of the mortgage which provides that a transfer includes "any pledge, hypothecation, assignment, transfer or other encumbrance of any direct or indirect ownership interest in the Mortgagor." Treeline GCP and Treeline Whitman Associates allege that the mortgagee's service agent represented that it would consent to the transaction if the mortgagor and guarantor agreed to structure the transaction as a transfer of the property and assumption of the mortgage by PCA, which would require payment of 1% of the loan twice as a transfer fee pursuant to Section 13(f) of the mortgage once for the sales agreement and once for the conveyance of the property for a total of $800,000.
In this action, Treeline GCP and Treeline Whitman Associates seek a declaration that the proposed transaction is permitted under the mortgage without the mortgagee Trust's permission. In the alternative, Treeline GCP and/or Treeline Whitman Associates seek reformation or recision of the mortgage and damages from UBS for fraudulent inducement.
Defendants maintain that pursuant to the terms of the mortgage, the proposed transaction requires the mortgagee Trust's consent. They seek dismissal of the complaint on that ground of documentary evidence pursuant to CPLR 3211 (a)(1), (7) and 3212.
DISCUSSION
A.General Legal Standards
Summary judgment is warranted where there are no genuine issues of material fact. Alvarez v. Prospect Hosp., 68 N.Y. 2d 320, 324 (1974); and Zuckerman v. City of New York, 49 N.Y. 2d 557 (1980). When deciding a motion to dismiss, the court must "afford the complaint a liberal construction, accept as true the allegations contained therein, accord the Plaintiff the benefit of every favorable inference and determine only whether the facts alleged fit within any cognizable legal theory." 1455 Washington Ave. Assocs. v. Rose & Kiernan Inc., 260 A.D. 2d 770, 771 (3rd Dept. 1999). See also, Sokoloff v. Harriman Estates Development Corp., 96 N.Y. 2d 409 (2001); Leon v. Martinez, 84 N.Y. 2d 83 (1994); and Guggenheimer v. Ginzburg, 43 N.Y. 2d 268 (1977).
"To succeed on a motion to dismiss pursuant to CPLR 3211(a)(1), the documentary evidence which forms the basis of the defense must be such that it resolves all factual issues as a matter of law and conclusively disposes of the Plaintiff's claim." Prudential Wykagyl/Rittenberg Realty v. Calabria-Maher, 1 A.D. 3d 422 (2nd Dept. 2003), citing, Trade Source v. Westchester [*3]Wood Works, Inc, 290 A.D. 2d 437 (2nd Dept. 2002). See also, Leon v. Martinez, supra; and Excel Graphics
Technologies, Inc. v. CFG/AGSCB 75 Ninth Ave., L.L.C., 1 A.D. 3d 65, 69 (1st Dept. 2003).
Section 13 of the mortgage begins with an acknowledgment by the mortgagor that the mortgagee was relying on its creditworthiness and business experience and that it would rely on its continued ownership of the property.Section 13(a) of the mortgage provides that the mortgagor Treeline GCP cannot make any "transfer" without the written consent of the mortgagee. Section 13(b)(iv) defines "transfer" to include:

"if Mortgagor, any Guarantor or any member of Mortgagor or any Guarantor is a limited or general partnership, joint venture or limited liability company, the change, removal, resignation or addition of a general partner, managing partner, limited partner, joint venturer or member or the transfer of the partnership interest of any general partner, managing partner or limited partner or the transfer of the interest of any joint venturer or member by which an aggregate of more than 25% of such limited partnership interests or membership interests are held by, or pledged to, parties who are not currently partners or member of Mortgagor's member (emphasis added)."
Section 13(b)(v) of the mortgage further includes "any pledge, hypothecation, assignment transfer or other encumbrance of any direct or indirect ownership interest in mortgagor" in the definition of a transfer. The mortgage contains a merger clause and bars any modification which is not executed in written form.
B.First Cause of Action
 In their first cause of action, Treeline GCP and Treeline Whitman Associates seek a declaration that the proposed transaction is permissible under the mortgage, specifically pursuant to Section 13(b)(iv), without the mortgagee Trust's consent.
"A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y. 2d 157, 162 (1990), citing, Mercury Bay Boating Club, Inc. v. San Diego Yacht Club, 76 N.Y. 2d 256, 269-270 (1990); Judnick Realty Corp. v. 32 West 32nd Street Corp., 61 N.Y. 2d 819, 822 (1984); Long Island R. Co., v. Northville Industries Corp., 41 N.Y. 2d 455 (1977); and Oxford Commercial Corp. v. Landau, 12 N.Y. 2d 362, 365 (1963). "That rule imparts 'stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses ... infirmity of memory ... [and] the fear that the jury will improperly evaluate the extrinsic evidence.'" W.W.W. Assocs., Inc., v. Giancontieri, supra at 162, quoting, Fisch, New York Evidence §42, at 22 (2d ed). "The rule has even greater force in the context of real property transactions, 'where commercial certainty is a paramount concern' and where, as here, the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length." See also, Wallace v. 600 Partners Co., 86 N.Y. 2d 543, 548 (1995). [*4]W.W.W. Assocs., Inc. v. Giancontieri, supra at 160.
"[T]he purpose of a merger clause is to require the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing." Jarecki v. Shung Moo Louie, 95 N.Y. 2d 665, 669 (2001), citing, Matter of Primex Intern. Corp. v. Wal-Mart Stores, 89 N.Y. 2d 594, 599 (1997). Extrinsic and parol evidence cannot be permitted to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face. WWW Assocs., Inc., v. Giancontieri, supra at 163. See also, Intercontinental Planning, Ltd, v. Daystrom, Inc., 24 N.Y. 2d 372, 379, rearg. den., 25 N.Y. 2d 959 (1969). [W]hen a contract term is ambiguous, parol evidence may be considered "to elucidate the disputed portions of the parties' agreement." Blue Jeans U.S.A. Inc. v. Basciano, 286 A.D. 2d 274, 276 (1st Dept. 2001), quoting, Pollak v. Lincoln Center for Performing Arts, 276 A.D. 2d 403, 404 (1st Dept. 2000). When extrinsic evidence is required to enable the interpretation of a contract, the issue becomes one for a jury. However, in the first instance, the determination of whether a writing is ambiguous is a question of law to be resolved by the court. W.W.W. Assocs. v. Giancontieri, supra at 162. See also, Van Wagner Advertising Corp. v S & M Enterprises, 67 N.Y. 2d 186, 191 (1986).
Courts must interpret a contract so as to give meaning to all of its terms. Excel Graphics, Technologies, Inc. v. CFG/AGSCB 75 Ninth Ave., L.L.C., supra at 67. See also, Mionis v Bank Julius Baer & Co., Ltd., 301 A.D. 2d 104, 109 (1st Dept. 2001). "It is a cardinal rule of construction that a court should not 'adopt an interpretation' which will operate to leave a 'provision of a contract without force and effect.' " Corhill Corp. v. S.D. Plants, Inc., 9 N.Y. 2d 595, 599 (1961), quoting, Muzak Corp. v. Hotel Taft Corp., 1 N.Y. 2d 42, 46 (1956). If there is an inconsistency between a general provision and a specific provision of a contract, the specific provision must control. Bank of Tokyo-Mitsubishi, Ltd., New York Branch v v Kvaerner, a.s., 243 A.D. 2d 1, 8 (1st Dept. 1998). See also, Muzak Corp. v Hotel Taft Corp., supra at 46; and 1 Restatement, Contracts §236(a).
Here, even if the mortgagee's permission was required for the proposed transaction pursuant to Section 13(b)(v), and Section 13(b)(iv) permits it without the mortgagee's consent, the latter section would control. By interpreting the parties' agreement in this fashion, Section 13(b)(v) does not nullify Section 13(b)(iv). Thus, whether Section 13(b)(iv) dispenses with the need for the mortgagee's permission must be determined first.
The first step of the proposed transaction here is the sale of PI Garden, which is a partner in the general partnership Treeline Whitman Associates, to PCA. While this constitutes a sale of only .0001% of Treeline Whitman Associates, Section 13(b)(iv) of the mortgage specifically characterizes the transfer of the partnership interest of any general partner of the guarantor as a "transfer" which requires the mortgagee's consent. The allowance of a transfer of 25% or less without the mortgagee's permission applies to "limited partnership interests or membership interests"; not general partnership interests.
The second step of the alleged transaction involves a pledge of 99.9999% of the general partnership interests in Treeline Whitman Associates to PCA. Contrary to the position of Treeline GCP and Treeline Whitman Associates, Section 13(b)(iv) does not address nor permit this. That section bars the transfer of the interest of any joint venturers or members by which an aggregate of more than 25% of such limited partnership interests or membership interests are held by, or pledged to, parties who are not currently partners or members of mortgagor' without the mortgagee's permission. Since Treeline Whitman Associates partners' interests not [*5]limited partnership or membership interests, that provision is of no avail.
Thus, it is hereby declared that the mortgagee's consent is required for the proposed transaction.
C.Second Cause of Action
In the event that the mortgagee's permission is, in fact, required for the proposed transaction, in their second cause of action, Treeline GCP and Treeline Whitman Associates seek reformation or recision of the mortgage. They allege mutual mistake, in that UBS, Treeline GCP and Treeline Whitman Associates believed that the proposed transaction was permitted without the mortgagee's approval or, in the alternative, fraud in that UBS misrepresented its interpretation of Section 13(b)(iv), on which Plaintiffs relied to their detriment when they entered the mortgage arrangement. Treeline GCP and Treeline Whitman Associates further allege that had they known UBS' true position, they would never have entered the transaction.
"[I]n order to reform a written agreement, it must be demonstrated that the parties came to an understanding but, in reducing it to writing, through mutual mistake or through mistake on one side and fraud on the other, omitted some provision agreed upon or inserted one not agreed upon." Slutzky v. Gallati, 97 A.D. 2d 561 ( 3rd Dept ), lv. app. den., 61 NY2d 602 (1983); and Curtis v. Albee, 167 N.Y. 360 (1901). See also, Leavitt-Berner Tanning Corp. v. American Home Assur. Co., 129 A.D. 2d 199, 201-2 (3rd Dept. ), lv. app. den., 70 N.Y. 2d 609 (1987). Only upon a "certainty of error" (Slutzky v. Gailanti, supra) or "clear and convincing evidence" (Leavitt - Berner Tanning Corp. v. American Home Assur. Co., supra at 201-2), is reformation to be granted. "The burden upon a party seeking reformation is a heavy one since it is presumed that a deliberately prepared and executed written instrument accurately reflects the true intention of the parties...." William P. Pahl Equipment Corp. v. Kassis, 182 A.D. 2d 22, 29 (1st Dept.), lv. app. den., 80 N.Y. 2d 1005 (1992), rearg den., 81 N.Y. 2d 782 (1993). See also, Leavitt-Berner Tanning Corp. v. American Home Assur. Co., supra at 202. A party seeking reformation must not only prove " ' in no uncertain terms' " mistake or fraud, " 'but exactly what was really agreed upon between the parties.' " William P. Pahl Equipment Corp. v. Kassis, supra at 29, quoting, South Fork Broadcasting Corp. v. Fenton, 141 A.D. 2d 312, 314 (1st Dept.), app. dism., 73 N.Y. 2d 809 (1988). See also, Chimart Assocs. v Paul, 66 N.Y. 2d 570, 574 (1986).
"To state a cause of action for fraud, a Plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the Plaintiff and resulting injury." Kaufman v. Cohen, 307 A.D. 2d 113, 119 (1st Dept. 2003). See also, Lama Holding Co. v. Smith Barney Inc., 88 N.Y. 2d 413, 421 (1996); Monaco v. New York University Medical Center, 213 A.D. 2d 167, 169 (1st Dept.), lv. app. den., 86 N.Y. 2d 882 (1995); and Callas v. Eisenberg, 192 A.D. 2d 349, 350 (1st Dept. 1993). Detail is required when pleading a cause of action for fraud. Kaufman v. Cohen, supra at 120; and Monaco v. New York Univ. Medical Center, supra at 169. "[T]o meet such requirement a Plaintiff need only provide 'sufficient detail to inform Defendants of the substance of the claims.' " Kaufman v. Cohen, supra at 120; and Bernstein v. Kelso & Co., Inc., 231 A.D. 2d 314, 320 (1st Dept. 1997).
Contrary to the Trust's position, Treeline GCP and Treeline Whitman Associates may simultaneously advance claims for declaratory relief enforcing their agreement or, in the alternative, recision. Evans v. Winston & Strawn, 303 A.D. 2d 331, 334 (1st Dept. 2003). However, they may not ultimately have their agreement both enforced and rescinded. Id. at 334; and Big Apple Car, Inc. v. City of New York, 234 A.D. 2d 136, 138 (1st Dept. 1996).
[*6]
Treeline GCP and Treeline Whitman Associates maintain that in the course of negotiating the mortgage, they repeatedly and emphatically advised UBS - - and UBS agreed - - that additional equity investments in the property would be needed. To facilitate that, partnership interests in Treeline Whitman Associates must remain freely transferable. More specifically, they allege that they specifically contemplated and anticipated the sale of PI Garden which, in fact, was established solely for this purpose in exchange for a preferred return on the purchaser's investment, which was to be secured by a pledge of Treeline Whitman Associates' partnership interests. Again, the mortgagee UBS was allegedly advised of such and agreed. It is claimed that section 13(b)(iv) of the mortgage was allegedly inserted at the mortgagor and guarantor's request precisely to enable this transaction.
C. Glenn Schor, President of Treeline GCP, executed the mortgage on its behalf. He attests that counsel for UBS, Ross Honig, Esq., of Schulte, Roth and Zabel, LLP, agreed that section 13(b)(iv) of the mortgage would allow Treeline GCP and, its sole member and guarantor, Treeline Whitman Associates to obtain a capital infusion through the transfer of partnership interests in Treeline Whitman Associates without the mortgagee's consent. He further alleges that the parties never intended that section 13(b)(v) would preclude what 13(b)(iv) specifically permitted. Indeed, he attests to a voice mail left at his office on October 20, 2003, in which Mr. Honig stated "that it was the intent of the parties that there be certain types of permitted transfers and that that one particular clause [section 13(b)(v)] wasn't intended to trump all else...." In opposition, UBS, via Ross Honig, Esq., attests that it was never specifically apprised of the transaction at issue here nor did it agree to it.
Here, there has been no mutual mistake. As for unilateral mistake, Treeline GCP and Treeline Whitman Associates' claim of fraud relates to the meaning of the terms of the mortgage. The mortgage itself specifically precludes reliance on any extrinsic documents or representations. In view of the clear language of mortgage, the mortgagor and guarantor could not have justifiably relied on alleged oral representations by UBS or its counsel concerning its interpretation of the mortgage, which would be necessary for reformation. The partners who constitute Treeline Whitman Associates, a member of Treeline GCP, are indisputably sophisticated real estate business people who are well schooled in the finance and management of commercial realty. Indeed, in this transaction, all of the parties were represented by experienced, highly competent lawyers. See, Chimart Assoc. v. Paul, supra. Under these circumstances, fraud involving the interpretation of an agreement simply cannot be established. Furthermore, Mr. Honig's purported representation that section 13(b)(iv) remained viable despite section 13(b)(v) does not change this result or suffice to raise an issue of fact as to the intended meaning of the mortgage document.
In order to find fraud, Plaintiffs must establish that they reasonably and "actually relied on the purported fraudulent statements." Schlaifer Nance & Co., Inc. v. Estate of Warhol, 927 F.Supp. 650, 660 (SDNY 1996), affd., 119 F. 3d 91 (2d Cir. 1997). Reliance is not reasonable or justifiable where Plaintiffs, who were involved in a major transaction, such as this, with access to critical information (to wit: the mortgage), but failed to take advantage of that access. See, Gruman Allied Indus., Inc. v. Rhor Indus., Inc., 748 F. Supp. 2d 729, 737 (2d Cir. 1984). See also, Philip Credit Corp. v. Regents Health Group, Inc., 953 F. Supp. 482 (SDNY 1997); and Pappas v. Harrow Stores, Inc., 140 A.D. 2d 501 (2nd Dept. 1988). Here, this Court finds that reliance upon the mortgagee's attorney over the clear and unambiguous provisions of the mortgage to be unreasonable and unjustifiable. See, Chasanoff v. Perlberg, 231 NYLJ 63, p. 25, [*7]Col. 1 (Sup. Ct., Nassau Co. 4/2/04).
D.Third Cause of Action
In their third cause of action, Treeline GCP and Treeline Whitman Associates seek to recover from the original mortgagee UBS for fraudulent inducement. They allege that UBS knowingly misrepresented that the proposed transaction would be allowed to induce them to take out the mortgage; that they relied on that misrepresentation; and that they never would have taken the mortgage had they known UBS' true position. As and for damages, Plaintiffs cite the loss of the $10.5 million infusion from PCA.This cause of action seeking damages for fraudulent inducement must also fail. To sustain such a cause of action, "there must be a knowing misrepresentation of material fact, which is intended to deceive another party and to induce them to act upon it, causing injury." Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher, 299 A.D. 2d 64, 70 (1st Dept. 2002); Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y. 2d 112, 119 (1969); Sorbaro Co. v. Capital Video Corp., 168 Misc. 2d 143, 148 (Sup. Ct., Duchess Co. 1996), affd, 245 A.D. 2d 364 (2nd Dept. 1997). A party's reliance on the misrepresentation must be reasonable. Tannehill v. Paul Stuart, Inc., 226 A.D. 2d 117, 118 (1st Dept. 1996). See also, Philip Credit Corp. v. Regents Health Group, Inc., supra; and Pappas v. Harrow Stores, Inc., supra. Again, the language of the mortgage speaks for itself. Under the circumstances, Treeline GCP and Treeline Whitman Associates' reliance on oral representations of UBS' attorney to afford them such significant and allegedly crucial rights was hardly reasonable.
In view of the foregoing, Plaintiffs' claims for punitive damages and attorney's fees cannot be sustained.
Accordingly, it is,
ORDERED, that the motion of Defendant LaSalle Bank, National Association to dismiss this action as to it is granted; and it is further,
ORDERED, that the motion of Defendant UBS Warburg Real Estate Investments, Inc. for summary judgment dismissing the complaint is granted; and it is further,
ORDERED, that Plaintiffs' cross-motion for partial summary judgment is denied.
This constitutes the decision and Order of the Court.
Dated: Mineola, NY _____________________________
 May 24, 2004 Hon. LEONARD B. AUSTIN, J.S.C.
 XXX