OPINION OF THE COURT
Loren N. Brown, J.
The plaintiffs have moved for an order punishing the defendants for civil and criminal contempt of court, permitting the State and its agents to enter dump sites at issue, without notice, and at any reasonable time for the purpose of allowing the State to fulfill its responsibilities under State law and granting it related relief. Defendant John Rock opposes the motion for a contempt order. Defendant Ross Rock opposes the *233 motion for contempt, and cross-moves for an order permitting "reconsideration” of the court’s order, signed on June 27, 1989, and entered on July 5, 1989, finding Ross Rock liable.
On November 11, 1988, local news media carried reports of a fire burning at a dump site in the Town of Milton, County of Saratoga. The burning dump, and a similar dump located in the Town of Corinth have been and continue to be the sources of litigation. The Corinth dump is owned by John Rock. The Milton dump is owned by defendant Ross Rock. According to Ross Rock, his son, John Rock, owed him a substantial sum of money. As payment, John conveyed the Milton land to his father, but retained a lease interest in the land without a right of reentry on the premises by Ross Rock. According to the elder Rock, his son thereafter commenced his "activities” on the land without his knowledge. The activity performed on the Milton and Corinth dumps was the business of the receipt of commercial waste products in exchange for monetary consideration. Apparently after receiving complaints by Milton neighbors, H. Gerry Beres of the State’s Department of Environmental Conservation sent Ross Rock a letter, dated February 6, 1985, stating that an inspection of the dump revealed certain violations of 6 NYCRR part 360 had occurred on the Milton property. The letter explained the need to apply for a permit for a waste disposal site which is to be operated for a period in excess of one year. In February of 1985, Beres sent Ross Rock an application for approval of a solid waste management facility. On June 9, 1987, Beres sent Ross Rock a letter stating that the facility, which had not been the subject of an application for approval, must be closed. Landlord Rock claims to have had no knowledge of the activities as described in the letters, apparently turning them over to his son without reading them. In October of 1988, the plaintiffs commenced this action against the defendants, alleging violations of the Environmental Conservation Law by the unlicensed operation of the Milton and Corinth waste facilities. A single attorney was retained to defend the action by all defendants. According to Ross Rock, the attorney was retained by his son, who took the only active part in defense of the action. Following a successful motion by the plaintiffs, this court found that a public nuisance had been created at both dumps. A copy of the resulting judgment was served on the defendants’ attorney. Ross Rock, because of his peripheral participation in the defense of the action, denies receipt of a copy of the judgment or an explanation as to what exactly was required of him *234 pursuant to the judgment. The plaintiffs now move for a contempt order, and other forms of relief, against all defendants. Defendant Ross Rock, on a variety of grounds, moves for reconsideration of the judgment as it affects him.
Initially, the court observes that, though characterized as a motion to reconsider, because new facts are alleged, not purported errors of law, it may more accurately be described as a motion to renew. (Estrow v Wilson, 30 AD2d 646.) Because it is a motion to renew, it is timely, though approximately nine months elapsed between entry of the judgment and this motion. (Prude v County of Erie, 47 AD2d 111.)
In support of his motion to renew, Ross Rock contends that, as a mere lessor of land without a right of reentry, and without knowledge of his son’s use of the land, he had no responsibility for any illegal activities. As an additional ground, Ross Rock contends that he was prejudiced by his attorney’s conflict of interest in representing all defendants. Neither ground posited is of sufficient merit to support a renewal and annulment of its previous judgment as it affects Ross Rock.
Addressing his purported lack of responsibility for the actions of his son, the elder Rock contends that neither 6 NYCRR part 360, nor case law cited by the plaintiffs, establishes a landlord’s liability for the unknown acts of a lessee. However, the linchpin of this position, a lack of knowledge of the lessee’s activities, is not credible. Letters were sent to Ross Rock which informed him that a waste facility had been created on his land, that a permit was needed, that violations of State regulations had been committed, that no permit had been obtained, and that the facility had to be closed. Taken together, the letters sufficiently apprised Ross Rock of the unpermitted activities being conducted on his land. A mere denial by Ross Rock that he read the letters addressed to him is not persuasive, nor is it sufficient to raise an issue of fact. As the recipient of the letters, Ross Rock is charged with knowledge of their content. (Price v Concourse Super Serv. Sta., 32 Misc 2d 349; see also, M. D. & Assocs. v Sears, Roebuck & Co., 749 SW2d 454 [Mo App]; Crissey v State Highway Commn., 147 Mont 374, 413 P2d 308.)*
*235 Having possessed sufficient knowledge of his son’s activity, Ross Rock, as landowner and landlord, was possessed of authority to enter the property and terminate his son’s use. (Real Property Law § 231 [1].) Having done nothing to intervene and abate the nuisance, Ross Rock became liable for his son’s actions. (Real Property Law § 231 [2]; People v Scott, 26 NY2d 286.)
In passing, the court will address Ross Rock’s contention that the provisions of 6 NYCRR part 360, which concerns the operation and closure of a waste treatment management facility, does not render the owner-lessor vicariously liable when all operation of the facility is done by the lessee. Though poor drafting leaves genuine doubt as to the regulations’ meaning, read alone, 6 NYCRR part 360 does not appear to visit the sins of the sons upon the father. Throughout part 360, the conjunction "or” is used when referring to the owner and operator and in placing responsibility for appropriate behavior in maintaining and closing a facility. Ordinarily, the use of the word "or” indicates that the language of the statute or rule should be construed in an alternative sense. (McKinney’s Cons Laws of NY, Book 1, Statutes § 234.) Therefore, either the owner or the operator is subjected to the terms of the statute. Apparently, a nonowning operator, if one existed, would be most directly in control of the facility, and the rule may represent a recognition that an owner who leases land without a right of reentry, and has no knowledge of the tenant’s use, should not be liable for that use.
However, a favorable ruling on the construction of 6 NYCRR part 360 notwithstanding, Ross Rock cannot succeed on the merits. In this context, Real Property Law § 231 (1) and (2) negate any meaningful distinction between owner and lessee. As the court has found, the owner knew of the lessee’s activities, and, to his peril, failed to cease and those activities correct their effects.
The movant’s alternative ground for renewal, a conflict of interest on the part , of the attorney by representing all defendants is equally without merit. The elder Rock argues that it was in his best interests for his attorney to assert his *236 lack of actual knowledge of the activities, and the fact that, as a mere landlord without a contractual right of reentry, he could not be held accountable for his son’s actions. However, Ross Rock admits receipt of the letters by which he is charged with knowledge of his son’s activities, and, by statute (Real Property Law §231 [1]) he had a right of reentry to correct the damage. Essentially, by the force of statute, Rock, the landlord, stepped into the shoes of Rock, the tenant, and their interests were not conflicting. Both faced and were forced to defend charges of, operating a waste management facility without a permit, and in an improper manner.
Moreover, until this late date, neither Rock objected to the dual representation, thus permitting representation of both by a single attorney. (Hutchison v Woodstock Community Unit School Dist. No. 200, 66 Ill App 3d 307, 384 NE2d 382.)
Addressing the motion for an order of contempt, the issues presented shall be decided after a hearing to be scheduled. The remainder of the plaintiffs’ motion is granted without opposition.

 [2] A finding that the recipient of a letter is charged with knowledge of its contents, and that a mere denial that the letters were read is insufficient to contest the issue of the recipient’s knowledge is a practical necessity. Were the rule otherwise, the presumption of delivery of a properly ad *235 dressed, stamped and mailed letter (News Syndicate Co. v Gatti Paper Stock Corp., 256 NY 211; New York N. J. Produce Dealers Coop. v Mocker, 59 AD2d 970) would be sorely diluted, if not rendered useless in many contexts. Where delivery is shown to have occurred, permitting a denial of its reading to raise an issue would require the sender to prove the unprovable.