**POLO RALPH LAUREN CORPORA-TION, Rolex Watch U.S.A., and Louis Vuitton, Plaintiffs,**

v.

**CHINATOWN GIFT SHOP, Fabrics–Atlas International Textile, Inc., Fabric–Textiles Import Export, Jolania Properties, Inc., Melvin Rauch, Charles W. Rauch, and Tenn Sun Realty Corp., Defendants.**

**No. 93 Civ. 6783 (TPG).**

United States District Court, S.D. New York.

June 21, 1994.

Brian W. Brokate, Heather J. McDonald, John C. Macaluso, Gibney, Anthony & Flaherty, New York City, for plaintiff.

Patricia Hatry, Davis & Gilbert, New York City, for defendants Jolania Properties, Inc.

## OPINION

GRIESA, Chief Judge.

In September 1993, plaintiffs, Polo Ralph Lauren Corporation, Rolex Watch U.S.A., Inc., and Louis Vuitton, filed this action alleging trademark infringement, false designation of origin, unfair competition and contributory infringement. Plaintiffs sued three "retailer defendants," Wen Hao Tang, Dao Mau, and Siu Wong Cheng, for selling infringing goods. Plaintiffs also sued four "landlord defendants," Jolania Properties, Inc., Melvin Rauch, Charles Rauch and Tenn Sun Realty Corporation, who leased premises to the retailer defendants.

Jolania now moves, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss the complaint for failure to state a claim, and, pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss for lack of subject matter jurisdiction. The motion is denied.

## JOLANIA'S CLAIMS

Jolania owns a building at 12 Mott Street in New York City. Jolania leased the building to Wen Hao Tang, one of the retailer defendants named in this action. Plaintiffs allege that Tang used the premises to sell goods that infringed their validly held trademarks. Plaintiffs further allege that Jolania was aware that its tenant was selling counterfeit goods on the premises, and did nothing to prevent the activity.

The complaint asserts two causes of action against Jolania and the three other landlord defendants. Count X charges that the landlords are contributorily liable under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, for knowingly failing to prevent the sale of counterfeit goods on their property. Count XI charges that the landlords are liable to plaintiffs under New York Real Property Law § 231(2), which provides:

> The owner of real property, knowingly leasing or giving possession of the same to be used or occupied, wholly or partly for any unlawful trade, manufacture or business, or knowingly permitting the same to be used, is liable severally, and also jointly with one or more of the tenants or occupants thereof, for any damage resulting from such unlawful use, occupancy, trade, manufacture or business.

On February 16, 1994, the court entered a default judgment against the retailer defendants. At present, the only defendants in the action are the four landlord defendants

including Jolania, who makes this motion to dismiss.

## DISCUSSION

■ In arguing that Count X does not state a claim under the Trademark Act, Jolania urges that the act is directed against trademark infringers, not their landlords. For example, the remedies section of the Trademark Act targets violators who "use", "reproduce, counterfeit, copy or colorably imitate" registered marks without permission. 15 U.S.C. § 1114(1). According to Jolania, the statute does not provide a cause of action for damages against someone who indirectly aids the violation of the statute.

■ The court disagrees. Although there is no explicit language in 15 U.S.C. § 1114(1), there is judicial precedent that interprets the statute as including a cause of action for contributory infringement of trademarks. In *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982), the Court considered whether a drug manufacturer could be held liable for the infringing actions of pharmacists who purchased its products. The Court ruled that the drug manufacturer could be held liable if one of two situations occurred. First, the drug company could be liable if it suggested, directly or indirectly, that the pharmacists should mislabel its products. *Id.* at 851, 102 S.Ct. at 2187. Second, the company could be liable if it sold its products "to retailers whom they knew or had reason to know were engaging in infringing practices." *Id.* at 852, 102 S.Ct. at 2187. A manufacturer who follows either course will be "contributorily responsible for any harm done as a result of the deceit." *Id.* at 854, 102 S.Ct. at 2188.

The theory of contributory infringement has not been asserted widely outside of the manufacturer/distributor context. However, there are cases in which the concept has been applied to landlords. In *Hard Rock Cafe Licensing Corporation v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir.1992), the court of appeals agreed with a district court holding that the contributory infringement test in *Inwood Laboratories* applied to a flea market operator who leased stalls to retailers selling infringing goods. The court reversed on the facts, however, because the evidence on the record did not support a finding of contributory infringement.

Based on these authorities, this court holds that plaintiff has pleaded a legally sufficient cause of action against Jolania in Count X for contributory infringement. Whether the evidence supports the claim remains to be seen.

■ Jolania next argues that the court should not exercise supplemental jurisdiction over the state law claim in Count XI.

A federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action with . . . original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if the state law claim raises novel or complicated issues of state law. 28 U.S.C. § 1367(c)(1).

As described earlier, Count XI is based on New York Real Property Law § 231(2). Jolania argues that supplemental jurisdiction over the § 231(2) claim is improper because this case presents an issue of first impression under state law—whether or not a landlord will be liable for trademark infringement carried out by his tenants. Jolania finds indications that the New York courts may intend to limit the statute's reach to "penal law violations directly related to the premises . . . [like] prostitution, gambling or narcotics." *Friends of Yelverton, Inc. v. 163rd St. Improvement Council, Inc.*, 135 Misc.2d 275, 514 N.Y.S.2d 841, 844 (N.Y. City Civ.Ct. 1986).

Plaintiffs argue that § 231(2) merely codified the preexisting duty of a landlord to prevent a known illegality on his premises, and that therefore the present case does not present a novel issue of law. Plaintiffs also point out that § 231(2) has been applied to violations outside the criminal sphere, contrary to the suggestion in *Yelverton*. For example, in *State v. Rock*, 147 Misc.2d 231, 555 N.Y.S.2d 584 (Sup.Ct. Saratoga Cnty. 1990), the court held a landowner liable for an illegal solid waste management facility operated by the lessee with his knowledge.

Plaintiffs argue that supplemental jurisdiction is proper.

The court is of the view that exercising supplemental jurisdiction over Count XI is appropriate. The federal and state causes of action relate to the exact same set of facts. To litigate them in two separate actions would be an unwarranted waste of time and judicial resources. The legal issue is not sufficiently complicated to warrant declining jurisdiction.

## CONCLUSION

The court denies Jolania's motion to dismiss Counts X and XI.

**SO ORDERED.**