LAUGH FACTORY, INC., Laugh Factory Times Square, Inc., and Jamie Masada, Plaintiffs,

v.

Richard BASCIANO, 303 West 42nd Street Realty Company, 303 West 42nd Street LLC, Times Square Arts Center, LLC, and 300 West 43rd Street Realty, Inc., Defendants.

No. 08 Civ. 1887 (JSR).

United States District Court, S.D. New York.

April 7, 2009.

Gregg M. Mashberg, Brendan O'Rourke, Anne Marie Bowler, Jenifer deWolf Paine, Proskauer Rose LLP, New York, NY, for plaintiffs.

Angelo Notaro, John Zaccaria, Notaro and Michalos, Orangeburg, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

To state the obvious, this hard-fought litigation, involving, as it does, 18 claims and 8 counterclaims, is no laughing matter. Plaintiffs are Jamie Masada and two companies of which he is the principal officer, Laugh Factory, Inc. and Laugh Factory Times Square, Inc. Defendants are Richard Basciano, whose principal business is managing and investing in New York real estate, and several entities actually or allegedly controlled by Basciano. In 2004, the parties jointly opened a comedy club called the Laugh Factory in the Times Square area of New York City. Masada and Basciano each had a 50% stake in this venture and were both active in its opening. In 2007, however, their relationship changed, with Masada, in February, giving up his ownership in the club in favor of a position as a paid consultant. In September 2007, Masada demanded that Basciano cease to use the name and logo of the Laugh Factory, and by early 2008 the

parties' relationship had fallen apart entirely.

In February 2008, plaintiffs filed suit, alleging, as noted, 18 separate claims including, among others, claims for trademark infringement and breach of contract. Defendants, in response, brought eight counterclaims and asserted nine affirmative defenses. After discovery, the parties filed cross-motions for partial summary judgment. Specifically, plaintiffs moved for summary judgment on defendants' second, third, fifth, sixth, seventh, and ninth affirmative defenses and on counts one through seven of defendants' counterclaims. All of the defendants moved for summary judgment on plaintiffs' ninth, tenth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and eighteenth claims for relief, and defendant 303 West 42nd Street, LLC moved for summary judgment in its favor on all claims.

After these motions were filed, plaintiffs withdrew their fourteenth claim for relief and part of their thirteenth and sixteenth claims for relief. Defendants withdrew their fourth counterclaim and their seventh affirmative defense. On December 5, 2008, this Court issued a "bottom-line" ruling granting plaintiffs' motion as to defendants' second, third, and fifth affirmative defenses and as to counts one, two, three, six, and seven of defendants' counterclaims, and denying plaintiffs' motion as to defendants' sixth and ninth affirmative defenses and as to count five of defendants' counterclaims. The Order also granted defendants' motion for summary judgment dismissing in their entirety plaintiffs' ninth, tenth, fifteenth, seventeenth, and eighteenth claims for relief; granting defendants' motion for summary judgment on plaintiffs' twelfth claim for relief with respect to the claim against Richard Basciano but denying the motion with respect to the claim against 300 West 43rd Street Realty, Inc.; granting defendants' motion for summary judgment on plaintiffs' sixteenth claim for relief with respect to the Indemnification and Release, the only remaining part of that claim; denying defendant's motion for summary judgment on plaintiffs' thirteenth claim for relief with respect to the Indemnification and Release, the only remaining part of that claim; and denying the separate motion of defendant 303 West 42nd Street, LLC for summary judgment on all claims of the amended complaint against that defendant. *See* Order dated December 5, 2008.

This Memorandum Order reconfirms these rulings and sets forth the reasons therefor.

Since 1979, according to plaintiffs, Masada has operated a comedy club in Los Angeles that is also called the Laugh Factory. Plaintiffs' Statement of Undisputed Material Facts Pursuant to Rule 56.1 in Support of Their Motion for Partial Summary Judgment ("Pl. 56.1") ¶ 13. Defendant Basciano is a businessman with a number of interests, including adult entertainment, real estate, hotels, and parking garages. *Id.* ¶ 4. Among the properties that Mr. Basciano controls are two interconnected buildings in Times Square, 303 West 42nd Street and 300 West 43rd Street (collectively, "the Buildings").[1] *Id.*

---

1. The Buildings are owned by companies called 303 West 42nd Street LLC, a named defendant, and 300 West 43rd Street LLC. Pl. 56.1 ¶ 5. 303 West 42nd Street LLC is controlled by the Basciano family, although the parties dispute which family members are involved. Defendant's Statement of Material Facts as to Which There Is No Genuine Issue To Be Tried ("Def. 56.1") ¶ 7; Plaintiffs' Counterstatement to Defendants' Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue To be Tried ("Pl. Counter 56.1") ¶ 7. The record does not indicate who controls 300 West 43rd Street LLC. However, Basciano does business under the registered assumed name 303 West 42nd Street Realty Company, Def. 56.1 ¶ 2, and in this capacity he holds master leases on both

¶ 5. In mid–2003, Masada and Basciano began to make plans to open a Laugh Factory club in New York City in the Buildings. *See id.* ¶ 19; Defendants' Counter–Statement Pursuant to Local Rule 56.1 ("Def. Counter 56.1") ¶ 19. In November, they formed a jointly-held company called The World Famous Laugh Factory of NYC, LLC ("Laugh Factory of NYC"). *See* Pl. 56.1 ¶ 22; Defendant's Statement of Material Facts as to Which There Is No Genuine Issue To Be Tried ("Def. 56.1") ¶ 4. The two members of Laugh Factory of NYC were defendant company 300 West 43rd Street Realty, Inc.—a New York corporation of which Basciano is the sole shareholder, Def. 56.1 ¶ 14—and plaintiff company Laugh Factory Times Square, Inc. (an entity controlled by Masada). Pl. 56.1 ¶ 22. Basciano and Masada each contributed $500,000 to Laugh Factory of NYC, *see* Pl. 56.1 ¶ 23; Def. Counter 56.1 ¶ 23, and they, through the entities they controlled, were each to receive 50% of the profits from the club, as well as to share equally in any losses. Pl. 56.1 ¶ 21; Def. Counter 56.1 ¶ 21.

Masada and Basciano made these commitments and began, in late 2003, renovating the Buildings, Pl. 56.1 ¶ 31, but despite ongoing negotiations they never completed a written operating agreement for the Laugh Factory of NYC, Pl. 56.1 ¶ 24. Nor did they enter into a written agreement governing the New York club's use of the Laugh Factory name and logo or a lease with Basciano, who apparently controls the Buildings under the registered name 303 West 42nd Street Realty Company. Pl. 56.1 ¶¶ 27, 28. Rather, the only written agreement they executed concerning the affairs of the Laugh Factory of NYC was a "Rider to Lease and Operating Agreement" (the "Rider") which referred to an unexecuted draft of a lease and operating agreement and was signed (by Basciano for defendant company 303 West 42nd Street, LLC and by Masada for the Laugh Factory of NYC) in August 2005, over a year after the Laugh Factory comedy club opened in Times Square in March 2004. Def. 56.1 ¶ 28. Nevertheless, the Laugh Factory operated from March 2004 to early 2007 with the involvement of both Basciano and Masada.

During this period, Basciano apparently deferred payment of rent by the Laugh Factory of NYC. Def. 56.1 ¶ 35.[2] Defendants claim that a total of $863,652 was deferred, although plaintiffs dispute this figure. *Id.* ¶ 39; Pl. Counter 56.1 ¶ 39. In any event, despite any concessions Basciano, as landlord, may have made, the Laugh Factory failed to turn a profit between March 2004 and February 2007. Def. 56.1 ¶ 38.

Masada, who had been highly involved in the preparations for the club's opening, remained somewhat involved with the club after it opened, although he was not always present in New York and often conducted his club-related business by telephone. Deposition of Thomas Simmonds, Ex. 4 to Declaration of Jenifer DeWolf Paine in Support of Plaintiffs' Motion for Partial Summary Judgment ("Paine Decl."), at 48. Sometime in late 2006 or early 2007, however, Masada apparently began having health problems, and Basciano understood that Masada's involvement in the New York club was becoming burdensome. Deposition of Richard Basciano ("Basciano Dep."), Ex. 5 to Paine Decl., at 86–87. In January 2007, Masada and Bas-

of the Buildings and, in turn, leases out spaces within them. *Id.* ¶ 3.

**2.** Plaintiffs admit only that the financials of the Laugh Factory NYC show rent accrued and not paid. Pl. Counter 56.1 ¶ 35. The parties also dispute whether rent increases were abated. Def. 56.1 ¶ 35; Pl. Counter 56.1 ¶ 35.

ciano came to an oral agreement that Masada would eventually give up his stake in the Laugh Factory of NYC and instead become a paid consultant to the club. *Id.* at 87; Letter from Richard Basciano to Jamie Masada dated January 25, 2007, Ex. 9 to Paine Decl.

This oral agreement was reduced to writing by two of Basciano's employees, Thomas Simmonds and Frank Cresci, Pl. 56.1 ¶ 38, and this document, entitled the "Summary of Agreement between Basciano and Masada" ("SOA") was executed by Basciano and Masada on February 7, 2007. The SOA provided that Masada would be hired as a consultant for two years at a rate of $100,000 per year and that these payments would be applied as a reduction against Masada's original contribution of $500,000 to the Laugh Factory of NYC. During this two-year period, 25% of any profits earned by the club were also to be applied against Masada's original contribution, and after two years Basciano would have the option of either extending the consulting agreement or paying Masada the balance of the $500,000. On February 28, 2007, Masada also executed two copies of a document entitled "Indemnification and Release" (the "IAR"), Pl. 56.1 ¶ 56, which had been drafted by Simmonds at Basciano's request, *id.* ¶ 57, under which Masada agreed to indemnify and hold harmless Basciano, his employees and companies, from "any and all claims," Indemnification and Release ("IAR"), Ex. 12 to Paine Decl.

For the first months after these documents were signed, Masada received payments pursuant to the SOA. Pl. 56.1 ¶ 36.[3] By September 2007, however, relations between Masada and Basciano had started to disintegrate. In a letter dated September 14, 2007, Masada asked Basciano to stop using the Laugh Factory name and logo. Letter from Jamie Masada to Richard Basciano, Sept. 14, 2007, Ex. 14 to Paine Decl. Basciano wrote back on September 18, expressing his confusion over why Masada had made this demand. Letter from Richard Basciano to Jamie Masada, Sept. 18, 2007, Ex. 15 to Paine Decl. Basciano further stated that he had invested over $4 million in the Laugh Factory, that he thought it was about to start making a profit, that he had understood the SOA to mean that he could keep using the Laugh Factory name, and that he did not intend to stop using it. *Id.*

Despite these protests, however, Basciano began seeking rights to an alternate name for the club, and by January 2008 he had begun to take steps to phase out his use of the Laugh Factory name and logo, including commissioning the design of a new sign for the "Times Square Arts Center" and taking down the "Laugh Factory sign" from the 42nd Street side of the premises. Declaration of Richard Basciano in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Basciano Opp. Decl.") ¶¶ 37–39. He informed Masada, however, that he needed more time to remove all Laugh Factory signage from the Times Square club. *See* Letter from Richard Basciano to Jamie Masada, January 11, 2008, Ex. G to Basciano Opp. Decl. On February 20, 2008, the name of The World Famous Laugh Factory of N.Y.C., LLC was changed to Times Square Arts Center, LLC. Def. 56.1 ¶ 5. By March 27, 2008, defendants had stopped using the Laugh Factory name entirely. Pl. 56.1 ¶ 68.

It appears that while all of this was transpiring between Masada and Basciano, Masada had also been negotiating a deal

---

**3.** Specifically, in 2007 Masada received eight checks for $8,866 each, for a total of $66,664.64. Pl. 56.1 ¶ 36.

with other parties, namely Jerry Wartski, Allen Wartski, and Arnold Burns, to open another venue in Times Square. Def. 56.1 ¶ 50. As early as December 2006, Masada had been discussing his possible involvement in a "supper club" planned by the Wartskis and Burns, *see* Defendants' Deposition Ex. 9, Ex. to Declaration of John Zaccaria in Support of Defendants' Motion for Summary Judgment ("Zaccaria Decl."), and as early as February 2007, the group had begun to contemplate using the Laugh Factory name and logo, *see* Defendants' Deposition Ex. 36, Ex. to Zaccaria Decl. In November 2007, Jerry Wartski and Masada executed agreements referring to the SOA and stating Masada's understanding that the SOA terminated any right Basciano and his companies had to use the Laugh Factory name. *See* Defendants' Deposition Exs. 54, 55, Exs. to Zaccaria Decl. At the same time, Jerry Wartski and Masada agreed to suspend plans to start a new comedy club pending the resolution of the dispute between Masada and Basciano. *See id.*

Against this factual background, the Court turns first to plaintiffs' motion and, in particular, to plaintiffs' motion for summary judgment dismissing defendants' various contract-based affirmative defenses and counterclaims. Defendants allege, to begin with, that they had an oral license to use the Laugh Factory trademarks, and they argue that this gives them both a valid affirmative defense (their third affirmative defense) and a basis for a declaratory judgment of non-infringement (the first of their counterclaims). The time period during which plaintiffs allege infringement is from September 14, 2007, when Masada demanded that Basciano stop using the Laugh Factory name and logo, through late March 2008, when Basciano so ceased. Thus, although evidence suggests that, in March 2004 if not earlier, Masada granted Basciano and/or the Laugh Factory of NYC an oral license to use the name and logo, the relevant question is whether there is any evidence that this license was still valid after September 14, 2007.

Plaintiffs argue that the SOA, when executed in February 2007, extinguished both any preexisting oral agreement concerning trademark rights and (to the extent it had any binding effect) the Rider to the unexecuted lease and operating agreement, which provided that if Masada elected to disassociate himself from the Laugh Factory of NYC, the company would still have the right to use the name "Laugh Factory." The SOA does indeed contain broad language stating that "[t]his document supersedes and voids all previous agreements and releases the respective parties thereunder as of the date hereof." Therefore, any preexisting grant of the right to use the Laugh Factory name and logo would not survive the execution of this agreement. That is not to say, however, that Basciano and the Laugh Factory of NYC did not have a revocable oral license after the SOA was signed. Masada's continued involvement with the club would permit such an inference. But any such license would have been terminated by Masada's letter on September 14, 2007 or as soon thereafter as would be reasonable given the general rule, under New York contract law, that a contract that does not contain a termination provision is terminable only upon reasonable notice, *Italian & French Wine Co. of Buffalo, Inc. v. Negociants U.S.A., Inc.*, 842 F.Supp. 693, 699 (W.D.N.Y.1993). Plaintiffs are therefore entitled to summary judgment dismissing defendants' third affirmative defense and Count One of defendants' counterclaims.

Count Two of defendants' counterclaims alleges that plaintiffs breached the SOA and IAR by improperly demanding that the use of the Laugh Factory name

and logo be discontinued, by purporting to terminate the defendants' rights to use the name and logo, and by Masada's failing to provide consulting services. However, defendants have waived the latter part of the claim. If Masada had indeed failed to provide consulting services, defendants would certainly have been aware of this fact; and yet they continued to pay Masada up until September 2007, and they point to no evidence that they ever objected to his alleged non-performance. *See AM Cosmetics Inc. v. Solomon,* 67 F.Supp.2d 312, 317 (S.D.N.Y.1999) ("[W]here a party to an agreement has actual knowledge of a breach, but elects to continue performance, that party waives the right to sue the breaching party unless timely notice of the breach was provided to the breaching party.").

■■■ As for the former trademark-related allegations, neither the SOA nor the IAR so much as mentions the rights to the Laugh Factory name and logo. There is nothing in either document to suggest that plaintiffs were bound to allow Basciano to continue to use them for the two-year "consulting period" or any other length of time. Defendants argue that the SOA is merely a summary of terms, not a fully integrated agreement, and that it is implicit in the agreement that the parties contemplated that Basciano would continue to run the Laugh Factory under its original name. They point to references to "the club" and the "World Famous Laugh Factory" as well as the fact that the terms are favorable to Masada. But to the extent that the SOA is not an integrated agreement and that, therefore, the Court may consider parol evidence to modify, explain or supplement it, *see Gualandi v. Adams,* 385 F.3d 236, 241 (2d Cir.2004), defendants point to no testimony or other evidence indicating that Masada promised defendants the use of the Laugh Factory name. While a court may read an implied covenant into a contract where it is necessary to effectuate the purposes of the contract, *DBT GmbH v. J.L. Min. Co.,* 544 F.Supp.2d 364, 384 (S.D.N.Y.2008), "a party who asserts the existence of an implied-in-fact covenant bears a heavy burden ... [and] must prove not merely that it would have been more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced is in fact implicit in the agreement viewed as a whole," *id.* (quoting *Rowe v. Great Atl. & Pac. Tea Co., Inc.,* 46 N.Y.2d 62, 69, 412 N.Y.S.2d 827, 385 N.E.2d 566 (1978)). Here, even though, as subsequent events demonstrated, Basciano would have been wise to obtain rights to the Laugh Factory name and logo, defendants have not shown that such a promise is necessarily implied in the agreement by which he bought out his business partner. Accordingly, plaintiffs' motion for summary judgment dismissing Count Two of defendants' counterclaims is granted.

■■ Defendants' third counterclaim, for breach of the covenant of good faith and fair dealing, fails for the same reasons. Not only is it arguably duplicative of defendants' breach of contract claims, *see Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 81 (2d Cir.2002) (stating that New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when plaintiff also brings a breach of contract claim on the same facts), it also must fail because the terms of the SOA do not allow the Court to imply an obligation on Masada's part to allow Basciano to continue to use the Laugh Factory name and logo. Accordingly, plaintiffs' motion for summary judgment dismissing Count Three of defendants' counterclaims is granted.

■■■ Defendants also argue, in their second affirmative defense, that the SOA and IAR, together, release defendants

from any liability for their use of the Laugh Factory name and logo. The SOA does void any previous agreement and releases the parties from any previously incurred obligations. And the IAR contains broad language of indemnification and release:

> the undersigned Jamie Masada agrees to indemnify, release and hold harmless Richard Basciano, including without limitation, any of Richard Basciano's designees, corporations, LLC's or partnerships from any and all claims that can or may be asserted by any entity ... concerning, without limitation, the operation, occupancy, tenancy or any interest whatsoever relating to the World Famous Laugh Factory ... now, in the past and forever.

Ex. 12 to Paine Decl. The New York Court of Appeals, however, has held that indemnification agreements must be construed narrowly, with regard to the particular objects the parties had in mind, even when their terms would appear to admit of wider application. *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). A promise to indemnify by a party with no legal duty to do so "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.* Here, Basciano himself has testified that the purpose of the agreement, as he understood it, was to protect him against claims by third parties. "I figured he could get sued," he stated. "And being that he's involved with me in this entity, I wanted him to indemnify me. And that was just as simple as that." Basciano Dep. at 188. Moreover, the language of the IAR is consistent with this interpretation. Accordingly, plaintiffs' motion for summary judgment dismissing defendants' second affirmative defense must be granted.

■ Next, the Court turns to plaintiffs' motion for summary judgment on those of defendants' counterclaims and affirmative defenses that allege, in essence, fraud on Masada's part. Count Five of defendants' counterclaims alleges fraud, Count Seven seeks rescission of the SOA and the return of the money defendants paid to Masada under its terms, and defendants' ninth affirmative defense is that plaintiffs' claims are barred by fraud—all on the ground that Masada misrepresented to the defendants that the defendants would be able to use the Laugh Factory name and trademarks for two years after Masada ceased to be a part-owner of Laugh Factory of NYC.

■ "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester,* 273 F.3d 153, 156 (2d Cir.2001). At the pleading stage, Rule 9(b) of the Federal Rules of Civil Procedure "requires that the plaintiff allege the time, place, speaker and sometimes even the content of the alleged misrepresentation." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 579 (2d Cir.2005). In proving the elements of fraud, the proponent of the claim must put forth clear and convincing evidence, *Mix v. Neff,* 99 A.D.2d 180, 183, 473 N.Y.S.2d 31 (3d Dep't 1984), a standard which applies at the summary judgment stage as well as at trial, *Century Pac., Inc. v. Hilton Hotels Corp.,* 528 F.Supp.2d 206, 219 (S.D.N.Y.2007).

Plaintiffs assert that, as an initial matter, defendants did not plead their fraud claims with sufficient particularity to satisfy Rule 9(b). Defendant's ninth affir-

mative defense, however, gives a full summary of the parties' prior business relationship and the circumstances of creating and signing the SOA, and it states that at the time Masada "intentionally represented that defendants ... could continue to operate ... under the Laugh Factory Trademark." Defendants' Answer to Amended Complaint, Affirmative Defenses and Counterclaims ("A & C") ¶¶ 210–219. Count Five and Count Seven of the counterclaims incorporate these statements by reference, with Count Five adding the assertion that Masada made false statements in conjunction with signing the SOA and count seven adding the assertion that plaintiffs represented they would provide consulting services in connection with the Laugh Factory of NYC. *Id.* ¶¶ 268–76, 283–88. In each case the pleadings provide a good deal of context, identify the approximate time at which the misrepresentation was made, and identify the speaker who made it. The pleadings are not legally deficient.

■■■■ Plaintiffs next argue that there is insufficient evidence that Masada made any misrepresentation to allow the issue to survive summary judgment. The parties debate whether the evidence will sustain an inference that Basciano was told by Masada that he could continue to use the Laugh Factory name and logo. Plaintiffs essentially do not dispute, however, that there is evidence that Masada was negotiating with the Wartskis and Burns to open another club and to use the Laugh Factory name at the time the SOA was signed, and defendants argue that Masada's failure to inform Basciano of this fact is an omission that rises to the level of a misrepresentation. An omission can be equivalent to a misrepresentation when there is a duty to disclose; and a duty to disclose arises in the course of negotiating a business transaction if "one party possess superior knowledge, not readily available to the other, and knows that the other is acting on

the basis of mistaken knowledge." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2d Cir.1984). The evidence in the record, looked at in the light most favorable to defendants, could support a finding that there was such a duty to disclose, and therefore an omission rising to the level of a fraudulent misrepresentation. Masada knew, as Basciano did not, that at the time he was pulling out of the Laugh Factory of NYC he also contemplated offering the name to other investors. This information would certainly have been material to Basciano. This evidence provides a sufficient factual basis for defendants' fraud-based counterclaims and affirmative defense to survive summary judgment.

■■■■ Plaintiffs also argue that even granting a factual basis for the fraud allegations, there are legal bases to dismiss them. This is partly correct and partly incorrect. The incorrect part is their argument that the fraud-based counterclaims and affirmative defense are duplicative of defendants' breach of contract claims and should be dismissed on that ground. While it is true that, when a valid contract claim is pled, in order to sustain a fraud claim on the same basic facts a party must show either a duty, a fraudulent misrepresentation, or a basis for damages that is distinct from the contract, *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir.1996), in this case the Court finds that it is defendants' contract theory that is defective, and so defendants' fraud claims need not fail simply because they also alleged, in the alternative, a defective claim of breach of contract.

■■■■ However, plaintiffs also argue that the equitable remedy of rescission, sought in Count Seven of defendants' counterclaims, is not available to defendants because they have an adequate rem-

edy at law, *viz.*, the return of the $66,664.64 they paid to Masada under the allegedly fraudulently induced SOA. Defendants do not respond to this argument and so have waived their right to contest this point; and moreover, the return of the money is indeed an adequate legal remedy that bars the claim in equity, *see Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher*, 299 A.D.2d 64, 72, 747 N.Y.S.2d 441 (1st Dep't 2002). Accordingly, while plaintiffs' motion for summary judgment as to defendants' ninth affirmative defense and Count Five of defendants' counterclaims must be denied, it must be granted as to Count Seven of defendants' counterclaims, the rescission claim.

■ Count Six of defendants' counterclaims asserts that plaintiffs are equitably estopped from terminating defendants' use of the Laugh Factory trademarks because plaintiffs represented to them that they would be able to continue to use the trademarks and they relied on that representation to their detriment. Relatedly, defendants' fifth affirmative defense asserts that plaintiffs' claims are barred by waiver and estoppel for the same reasons. Because defendants have not adduced any evidence indicating that plaintiffs made any affirmative representation to defendants that they would be allowed to use the Laugh Factory name and logo for any fixed period of time, summary judgment must be granted in favor of plaintiffs dismissing this counterclaim and affirmative defense.

■ Defendants' sixth affirmative defense asserts that plaintiffs' claims are barred, in whole or in part, by plaintiffs' unclean hands. It is well-established that a court of equity will not exercise its power in favor of a plaintiff whose actions show inequitable conduct or bad faith where the misconduct has a material relation to the equitable relief that plaintiff seeks. *See, e.g., Motorola Credit Corp. v. Uzan*, 561 F.3d 123 (2d Cir.2009); *Spe-*

*cialty Minerals, Inc. v. Pluess–Staufer AG*, 395 F.Supp.2d 109, 112 (S.D.N.Y. 2005). The Court finds, however, that there are genuine issues of fact concerning whether Masada's failure to disclose to Basciano his ongoing negotiations with the Wartskis and Burns makes the unclean hands doctrine applicable to plaintiffs' claims for equitable relief. Accordingly, plaintiffs' motion for summary judgment on this affirmative defense must be denied.

The Court turns next to defendants' motion for partial summary judgment, beginning with plaintiffs' ninth claim for relief. This claim alleges that defendants breached an agreement under which Masada was to be paid $4,500 per week and provided with a rent-free apartment in New York a well as receive a 50% share of the profits of the Laugh Factory of New York. Defendants point out that there is evidence that Masada paid monthly rent on his apartment to 303 West 42nd Street Realty (Basciano's alias) from May 2004 to April 2007, *see* Deposition of Steven Stroll, Ex. to Zaccaria Decl., and no evidence that he ever protested this arrangement. They also note that the Rider—which, whether or not it is binding, is certainly evidence of the terms of the agreement that existed between the parties—states that "Jamie Masada and Richard Basciano are to receive equal compensation when the Company has sufficient profits to pay same" and makes no mention of any additional payments or benefits for Masada. Ex. 17 to Paine Decl. On the other side, plaintiffs have been unable to adduce any evidence that indicates that Basciano or any other defendant made a commitment to pay him a salary or provide him with an apartment. As for the claim that defendants failed to share the profits from the Laugh Factory of NYC equally with plaintiffs, it is belied by the parties' mutual admission that the Laugh Factory of NYC did not make a

profit between March 2004 and February 2007, *see* Def. 56.1 ¶ 38; Plaintiffs' Counterstatement to Defendants' Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue To be Tried ("Pl. Counter 56.1") ¶ 38. Summary judgment in defendants' favor dismissing plaintiffs' ninth claim must therefore be granted.

Plaintiffs' tenth claim for relief alleges that defendants breached the implied covenant of good faith and fair dealing by attempting to prevent performance of the agreements between the parties and withholding from plaintiffs the benefits of their agreements. This claim fails for the same reason as the ninth claim: plaintiffs' failure to adduce any evidence indicating the existence or terms of an alleged agreement that defendants failed to honor.

Plaintiffs' eighteenth claim for relief, in which plaintiffs assert that they are due compensation in *quantum meruit* for the services Masada rendered to the Laugh Factory of NYC, fails for the related reason that what evidence there is concerning the terms of the agreement between Masada and Basciano—including the Rider—indicates that the two agreed to share profits from the club equally. Indeed, plaintiffs themselves state that Masada and Basciano were each to receive 50% of the profits from Laugh Factory of NYC. Pl. 56.1 ¶ 21. A party to a joint venture who agrees to provide services to that venture in return for a share of the profits cannot recover in *quantum meruit*. *Levy v. Keslow*, 235 A.D.2d 293, 294, 652 N.Y.S.2d 292 (1st Dep't 1997). A remedy in quasi-contract is, in essence, "a legal obligation imposed in order to prevent a party's unjust enrichment," *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987), and plaintiffs have not shown that Basciano profited unjustly or that Masada did not get what he bargained for from the Laugh Factory venture.

Summary judgment must also be granted dismissing plaintiffs' fifteenth claim for relief, which asks that the SOA be declared void or rescinded on the ground that it violates the Thirteenth Amendment of the United States Constitution by imposing involuntary servitude on Masada. Plaintiffs argued, in their brief, that this doctrine means, at least, that the SOA must be interpreted to allow Masada the right to terminate the agreement. The Court is unable to discern the legal basis for this claim. Plaintiffs' argument would appear to render any personal services contract terminable at will without liability for the terminator. Ordinary contract principles are sufficient to resolve the question of under what circumstances Masada can terminate the SOA and what his liability may be for doing so.

In the thirteenth and sixteenth claims for relief in the amended complaint, plaintiffs seek declaratory judgment that the IAR is void on the grounds of lack of consideration and unconscionability, respectively.[4] With regard to the first ground, there is no evidence that any consideration was paid in connection with the IAR. Defendants argue that summary judgment is appropriate because under New York law, no consideration is required to make a written release binding, *see* N.Y. Gen. Obligation. Law. § 15–303. While this is accurate, for the reasons previously stated the Court agrees with plaintiffs that the IAR was intended as an indemnification of Basciano against claims by third parties rather than a release of Basciano from liability to Masada. Defen-

---

**4.** Plaintiffs had originally sought declaratory judgment that the SOA was also void on the same grounds, but they abandoned these claims during briefing. *See* Order dated December 5, 2008.

dants point to no legal authority indicating that consideration is not required for a valid indemnification agreement, and indeed, New York law is to the contrary. *See, e.g., Jones v. Weiler,* 263 A.D. 183, 32 N.Y.S.2d 249, 251 (3d Dep't 1942) (holding that the assumption of a legal obligation is sufficient consideration to create a valid indemnity agreement). Defendants' motion for summary judgment on the remaining part of plaintiffs' thirteenth claim for relief must therefore be denied.

 Defendants' motion for summary judgment on the remaining part of plaintiffs' sixteenth claim for relief must, however, be granted. In order to declare a contract void for unconscionability, a court must find that the contract was "both procedurally and substantively unconscionable when made—*i.e.,* some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Gillman v. Chase Manhattan Bank,* 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). Looking at the requirement of procedural unconscionability alone, it is clear that plaintiffs have made an insufficient evidentiary showing to survive summary judgment. While there is evidence that the IAR was drafted by Basciano's employees and then presented to Masada to sign, *see* Pl. 56.1 ¶¶ 57–58, this does not rise to the level of "deceptive or high pressure tactics" depriving a party of meaningful choice that, under New York law, will support a finding of unconscionability. *Gillman,* 73 N.Y.2d at 10–11, 537 N.Y.S.2d 787, 534 N.E.2d 824. Given this finding, it is unnecessary to consider the issue of substantive unconscionability.

 Plaintiffs' twelfth claim for relief alleges that Basciano and/or 300 West 43rd Street Realty Co. breached a fiduciary duty to the Laugh Factory of NYC by diverting revenues from that enterprise to Basciano and/or one or more of Basciano's companies. Defendants argue that such a claim cannot succeed against Basciano in his personal capacity because he is not a member of the Laugh Factory of NYC limited liability company. Under New York law, a manager member of an LLC owes a fiduciary duty to the other members of the LLC. N.Y. Ltd. Liab. Co. Law § 409. *See also Salm v. Feldstein,* 20 A.D.3d 469, 470, 799 N.Y.S.2d 104 (2d Dep't 2005); *Nathanson v. Nathanson,* 20 A.D.3d 403, 404, 799 N.Y.S.2d 83 (2d Dep't 2005). As plaintiffs point out, where no manager is appointed in the articles of organization of an LLC, management vests in the members who actually manage the operation. N.Y. Ltd. Liab. Co. Law § 401. There is evidence that Basciano and his employees did handle many of the operations of the Laugh Factory of NYC, including, for example, bookkeeping, *see* Deposition of Thomas Simmonds, Ex. 3 to Declaration of Justin Heinrich ("Heinrich Decl.") at 47, and obtaining the club's liquor license, which was in the name of 300 West 43rd Street Realty Co., *see* Deposition of Frank Cresci, Ex. 7 to Heinrich Decl., at 135–36. To the extent that in so doing they were acting on behalf of defendant company 300 West 43rd Street Realty Co., there is evidence that could support a finding that that entity was a managing member of the Laugh Factory of NYC limited liability company and accordingly owed—and potentially breached—a fiduciary duty to the other member, plaintiff company Laugh Factory Times Square, Inc. Plaintiffs have not set forth, however, the legal basis on which they bring a claim for breach of fiduciary duty against Basciano in his personal capacity. While a member of an LLC may bring a derivative claim against a third party on behalf of the company, *Tzolis v. Wolff,* 10 N.Y.3d 100, 102, 855 N.Y.S.2d 6, 884 N.E.2d 1005 (2008), plaintiffs have not pled or argued a

derivative claim; instead they suggest that Basciano, a non-member of the LLC, somehow became a manager member "by operation of law," *see* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 14.[5] For these reasons, summary judgment on the twelfth claim for relief must be granted dismissing the claim as to Basciano himself but not as to 300 West 43rd Street Realty Co.

■ Defendants also moved for summary judgment on plaintiffs' seventeenth claim for relief, which alleges that defendants fraudulently induced Masada to enter into the original agreement with Basciano through the acts of one Ben Kolbert. The amended complaint alleges that Kolbert was Basciano's agent and that Kolbert told Masada, falsely, that he was employed by the Time Square Business Improvement District and could arrange for tax incentives and grants if Masada were to open a Laugh Factory in the Buildings. Am. Compl. ¶¶ 31–33. Defendants argue that plaintiffs' pleadings fail to state with particularity the circumstances constituting the alleged fraud, including the facts establishing the agency relationship. *See* Fed.R.Civ.P. Rule 9; *Kolbeck v. LIT Am., Inc.*, 923 F.Supp. 557, 569 (S.D.N.Y.1996) (stating that when an implied agency relationship is part of an alleged fraud, "the circumstances constituting the underlying fraud on the part of the purported principal include both the facts constituting an underlying fraud and the facts establishing the agency relationship") (quotation marks omitted). The pleadings, which state no more than that Kolbert was an agent of defendants, do not satisfy the pleading requirements of Rule 9(b), Fed. R.Civ.P., for fraud claims.

Ordinarily, if this were a motion to dismiss, plaintiffs would be given an opportunity to cure this problem through amended pleadings. But with discovery now concluded, this motion is also for summary judgment, and plaintiffs have not presented sufficient evidence of an agency relationship between Kolbert and Basciano or any defendant entity to withstand summary judgment. The evidence does show that Kolbert was a real estate broker, or "finder," who referred prospective tenants to defendants. *See* Deposition of Thomas Simmonds, Ex. 3 to Heinrich Decl., at 21. But there is insufficient evidence that any defendant either had agreed that Kolbert would act on its behalf in an ongoing way or exercised meaningful control over Kolbert, both of which circumstances are necessary to establish an agency relationship under New York law. *See In re Parmalat Securities Litigation*, 501 F.Supp.2d 560, 588 (S.D.N.Y.2007). Summary judgment must therefore be granted to defendants dismissing plaintiffs' seventeenth claim.

■ Finally, defendant 303 West 42nd Street, LLC has moved for summary judgment on all counts against it, asserting that it did not participate in the events that are the subject of the amended complaint, was never a party to a contract with any of the plaintiffs, did not participate in the Laugh Factory Club, and never used the Laugh Factory name or logo. Plaintiffs respond, accurately, that 303 West 42nd Street, LLC is a signatory to the Rider, on which defendants elsewhere place considerable reliance. Moreover, 303 West 42nd Street, LLC, is part owner of the Buildings, Pl. 56.1 ¶ 5. Although the law in this area is still developing, numerous courts have held that the established doctrine of contributory liability for trade-

---

5. The parties also debate the significance of the IAR for any liability for a breach of fiduciary duty. As noted above, however, the

Court finds that the IAR is an indemnification against third party claims rather than a release of claims between the parties.

mark infringement, *see Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (holding that under certain circumstances a manufacturer or distributor of a product can be contributorily liable for supplying it to an infringer), may extend to landlords who rent or lease premises to a tenant who infringes another's trademark, *see, e.g., Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955. F.2d 1143 (7th Cir.1992); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir.1996).

It is true that the Second Circuit has not yet ruled on this issue, and courts in this district, *see, e.g. Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.Supp.2d 463, 504–05 (S.D.N.Y.2008), have not universally adopted the *Fonovisa* standard, which imposes liability where a landlord knowingly (or with reason to know) contributes to the infringing conduct of another, 76 F.3d at 264–65. But courts in this district *have* held that a landlord may be contributorily liable for the infringing acts of a tenant, *see, e.g., Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F.Supp. 648, 650 (S.D.N.Y.1994), and whether the standard here applied is the *Fonovisa* standard or the more exacting standard adopted in *Tiffany*—requiring courts to assess the degree of control the defendant exercised over the infringing party, 576 F.Supp.2d at 506—defendant 303 West 42nd Street, LLC has not shown that summary judgment in its favor is appropriate on any of the claims against it that survive after the more general motion brought by all the defendants.

For the foregoing reasons, there still remain for trial (a) plaintiffs' first through eighth and eleventh claims for relief in their entirety as well as their twelfth claim for relief as it pertains to defendant 300 West 43rd Street Realty, Inc. and their thirteenth claim for relief as it pertains to the IAR; and (b) defendants' fifth and eighth counterclaims, as well as their first, fourth, sixth, eighth and ninth affirmative defenses. Counsel are directed to jointly call Chambers by no later than April 15, 2009 to set a trial date for these remaining matters.

SO ORDERED.